UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANT CAPITAL, LLC and<br>NEW SUNSHINE, LLC,<br><br>    Plaintiffs / Counter-claim<br>    Defendants,<br><br>v.<br><br>MELANIA MARKS SKINCARE, LLC,<br><br>    Defendant / Counter-claim<br>    Plaintiff. | )<br>)<br>)<br>)<br>)<br>) CAUSE NO.: 1:13-cv-00873-JMS-DML<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' STATUS REPORT REGARDING DEPOSITIONS

Plaintiffs Merchant Capital, LLC ("Merchant Capital") and New Sunshine, LLC ("New Sunshine") (collectively "Plaintiffs"), by counsel, for their Status Report Regarding Depositions, states the following:

### INTRODUCTION

On August 27, 2013, the Court conducted a telephonic discovery conference regarding whether the parties would be permitted to take the depositions of third-party witnesses Donald Trump ("Trump") and John Menard. At this conference, the Court decided to let the parties proceed with discovery and depositions, and ordered the parties to provide a status report by October 4, 2013. However, by joint agreement during a subsequent telephonic discovery conference on October 3, 2013, the parties agreed to provide their status report by October 11, 2013.

In a conference on October 9, 2013, counsel agreed it would be best for each side to present a separate report regarding its contentions, specifically whether Donald Trump should be deposed in this case.

## PLAINTIFFS' POSITION WITH REGARD TO THE DEPOSITION OF DONALD TRUMP

Rule 30(a) of the Federal Rules of Civil Procedure states "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in RCFC 30(a)(2)." Under the clear language of Rule 30, Plaintiffs are provided the latitude to take the deposition of Trump without needing to seek leave of court.

Here, Plaintiffs also note they are attempting to take the deposition of someone who is not even a party to this action, and therefore Defendant's grounds for objecting to the taking of a non-party's deposition are minimal from the outset. Merely because Defendant does not want Plaintiffs to take Trump's deposition is not sufficient grounds to preclude Plaintiffs from doing so.

Additonally, "[t]he fact that other witnesses may have testified about [a deponent]'s knowledge (or lack thereof) does not preclude [the deposing party] from hearing about those matters from [the deponent] himself. Generally speaking, '[a] witness cannot escape examination by claiming that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge.' 8 Wright & Miller § 2037 at 500." Steadfast Ins. Co., Inc. v. Auto Mktg. Network, Inc., 1999 WL 300231 at *2 (N.D. Ill. May 3, 1999). Therefore, simply because other witnesses have testified regarding what Trump knew and/or did with regard to the License Agreement is not sufficient on its face to preclude Plaintiffs from taking Trump's deposition.

Even if Defendant claims there is a sufficient connection either through Trump's marriage to Melania Trump and/or Defendant's corporate relationship with The Trump Organization that provides Defendant with the basis for objecting to Trump's deposition, there still has been no showing at this time that Trump lacks unique or superior knowledge. To date, Plaintiffs have taken the deposition of Melania Trump, Jonathan Gross (the then-general counsel for The Trump Organization who negotiated the terms of the License Agreement), Cathy Glosser (the Executive Vice President for Global Licensing for The Trump Organization), Steve Hilbert, and Tomisue Hilbert. Other than Gross, who self-invoked the attorney-client privilege and unilaterally refused to provide any substantive testimony on most questions regarding Trump, the testimony from the other witnesses have generally referenced Trump, but there has been largely either a lack of memory as to things that may have been said either to or by Trump, or there was a lack of participation in any conversations by these witnesses to even know what Trump may have said. Therefore, there can be no showing by Defendant, based on the evidence to date, that Trump lacks unique or superior knowledge to preclude his deposition.

Further, Plaintiffs contend the Court's ruling in <u>In re Bridgestone/Firestone, Inc., Tires Products Liab. Litig..</u>, 205 F.R.D. 535 (S.D. Ind. 2002) is instructive on this issue. In <u>Bridgestone/Firestone</u>, the Court addressed the request by the plaintiffs to take the deposition of William Clay Ford, Jr., the then-Chairman of the Board of Ford Motor Company. With regard to the objection to this request, the Court stated:

> On August 6, 2001, Magistrate Judge Shields granted the plaintiffs' motion to compel the deposition of William Clay Ford, Jr., who at that time was the Chairman of the Board of Ford Motor Company. Magistrate Judge Shields's Entry directs Ford to produce Mr. Ford at Ford's Corporate Headquarters for deposition according to a schedule that allots state court attorneys seven hours, MDL attorneys three hours, and Firestone's attorneys one hour for questions. The Entry gives Ford one hour for cross-examination and all plaintiffs two hours for any redirect examination.

Ford maintains that Judge Shields's Entry is clearly erroneous and contrary to law, and therefore should be set aside pursuant to Fed.R.Civ.P. 72(a). It argues that federal courts require, as a prerequisite to taking the deposition of an "apex" official, a showing that he or she has "unique personal knowledge" of relevant matters. Ford asserts that the plaintiffs failed to make this showing with respect to Mr. Ford. In addition, Ford claims that Magistrate Judge Shields erred in allowing the deposition despite acknowledging her "suspicion" that Mr. Ford has no unique personal knowledge relevant to this litigation.

Several factors lead us to the conclusion that Magistrate Judge Shields's order allowing the plaintiffs to take Mr. Ford's deposition is neither contrary to law nor clearly erroneous. First, the plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues. Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case. *See Six West Retail Acquisition v. Sony Theatre Management,* 203 F.R.D. 98 (S.D.N.Y.2001); *Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140 (D.Mass.1987). The evidence produced by the plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture in this action. Although Ford has attempted to elevate Magistrate Judge Shields's comment that she "suspects that Ford's assertion that Mr. Ford has no unique personal knowledge relevant to this litigation is accurate" to the level of a finding inconsistent with her conclusion, we do not read so much into that comment.

Second, the cases upon which Ford relies for its position that courts impose a burden on the proponent of the deposition to demonstrate the "apex" official's unique personal knowledge stop well short of establishing a rigid rule applicable in all cases. Nearly every decision Ford has cited involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement. *See, e.g., Thomas v. IBM,* 48 F.3d 478 (10th Cir.1995)(individual employment case); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979)(individual negligence case); *Baine v. General Motors,* 141 F.R.D. 332 (M.D.Ala.1991)(individual personal injury case); *Mulvey v. Chrysler Corp.,* 106 F.R.D. 364 (D.R.I.1985) (individual personal injury case). Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.

We are unwilling, however, to require rigid adherence to the burdens imposed under the facts of those cases, because the circumstances here are quite different and the rationale for the severe limitations on the right to depose a high level executive is not compelling in this case. First, conduct and knowledge at Ford's highest corporate levels may well be relevant to the issues presented in this

> litigation. *See Six West,* 203 F.R.D. at 105, and *Travelers,* 116 F.R.D. at 142-45 (both distinguishing on this basis several of the cases Ford has relied upon). Second, the plaintiffs seek to depose Mr. Ford, not for purposes of a single personal injury case, but to depose him *once* for all of the hundreds of personal injury cases pending in the MDL, the MDL class action, and many state court cases. Indeed, it was Ford (and Firestone) who championed the (1) the consolidation of all federal cases in the MDL and (2) the coordination of MDL and state court cases, principally to achieve the efficiencies of consolidated, coordinated discovery. It seems to us that the coordinated deposition procedures outlined by Magistrate Judge Shields will serve to discourage numerous, repetitive, harassing, or abusive depositions of Mr. Ford.
>
> Third, we find that Magistrate Judge Shields has given due deference to Mr. Ford's need to be protected from abusive deposition tactics. She ordered that the deposition be taken at Ford's headquarters and imposed strict time limits on the questioning. Moreover, the Court stands ready to impose limits during the course of the deposition should Ford's articulated concerns-about irrelevant questions, questions on subjects about which Mr. Ford obviously has no personal knowledge, and other "grandstanding" or harassment-become a problem.
>
> Finally, nearly all of the depositions in this case have already been conducted. The parties and the Court can therefore identify more readily the appropriate areas of questioning to be directed to Mr. Ford. For this reason, the Court imposes an additional requirement on the plaintiffs: One week before Mr. Ford's deposition, plaintiffs shall file under seal with the Court (but not serve) a list of the subjects to be covered in Mr. Ford's deposition. The purpose of this submission is not to provide the basis for a pre-deposition adjudication of the allowable scope of questioning. (The submission will be for *in camera* review only.) The purposes of the submission are (1) to aid the Court in preparing to rule on any disputes that may arise during the deposition, and (2) to promote the plaintiffs' adherence to a range of subjects the propriety of which they are prepared to defend.

Id. at 535-37.

      For the Court's reference, the following is an example of several documents produced through discovery in this case (with the Bates stamp noted for each document) in which Trump is referenced:

> 1)    The License Agreement itself personally references Trump several times, and therefore Plaintiffs should be able to inquire about Trump's knowledge about the inclusion of this language into a contract in which he was not a party.

5

2) An e-mail to the then-New Sunshine general counsel (NS0004833) with a subject line of "for Donald" and that attached a product overview power point presentation related to the Celebrity Apprentice.

3) An e-mail from Steve Hilbert (NS0004670) directed to Trump about the licensed products in the License Agreement in which Hilbert states, in part, "I am willing to talk to Paige but YOU ARE THE MAN, we have some great ideas for task." Hilbert also says "Will call you later today."

4) An e-mail from Steve Hilbert to Melania Trump (NS0009161) dated the same day the License Agreement was executed, which states, in part, "The contract is done, we must order product to hit out (sic) dates. If you need to talk to Donald, Eric is President of New Sunshine and has full authority to sign. We need to get this done."

5) An e-mail from Steve Hilbert to New Sunshine's general counsel (NS0001313) regarding the licensed products in the License Agreement that states "Let's talk tomorrow on this, I will call Donald after we talk."

6) An e-mail from Steve Hilbert to New Sunshine's general counsel (NS0028433) that states "Let me see first, also add possible Celebity Apprentice. Donald talked about doing for very little $$$."

7) An e-mail from Steve Hilbert to Cathy Glosser (the Executive Vice President of Global Licensing for The Trump Organization) stating "Yes I did talk with Melania. I didn't commit that we could absolutely hit next Spring as a launch date. We agreed I would talk to Sadoux with the Celebrity Apprentice and Donald will as well per Melania. If we get Family consideration and we launch on CA we will hit Spring roll out."

As stated above, these are just examples, and there are multiple other documents in which Trump is referenced. Moreover, the evidence in this case is replete with references to communications with Trump, the personal relationship between the Trumps and the Hilberts, and other potential business deals consummated between the Trumps and the Hilberts that Plaintiffs believe have a direct bearing on the circumstances leading up to, and during, the negotiations of the terms of the License Agreement.

WHEREFORE, Plaintiffs requests an order permitting Plaintiffs to take the deposition of Donald Trump, and for all other relief the Court may deem just and proper.

Respectfully submitted,

/s/Jerry M. Padgett_____
Jerry M. Padgett (#27282-49)
One of the Attorneys for Plaintiffs,
*Merchant Capital, LLC and New Sunshine, LLC*

Kevin C. Tyra, #11883-49
Jerry M. Padgett, # 27282-49
THE TYRA LAW FIRM, P.C.
355 Indiana Ave.; Suite 150
Indianapolis, IN 46204
Telephone: (317) 636-1304
Facsimile: (317) 636-1343
kevin.tyra@tyralaw.net
jerry.padgett@tyralaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Norman T. Funk
Libby Y. Goodknight
Bryan S. Strawbridge
KRIEG DEVAULT LLP
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

/s/ Jerry M. Padgett_____
Jerry M. Padgett