IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANT CAPITAL, LLC, and<br>NEW SUNSHINE, LLC<br><br>    Plaintiffs and<br>    Counterclaim Defendants,<br><br>    v.<br><br>MELANIA MARKS SKINCARE, LLC<br><br>    Defendant and<br>    Counterclaim Plaintiff. | CASE NO. 1:13-cv-0873-JMS-DML |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' INFORMAL REQUEST FOR DEPOSITION OF NON-PARTY DONALD J. TRUMP

Defendant Melania Marks Skincare, LLC ("Melania Marks"), by counsel, respectfully submits this Response in Opposition to Plaintiffs' Informal Request for Deposition of Non-Party Donald J. Trump ("Mr. Trump").

### INTRODUCTION

This case, which will be tried to the bench on November 12-14, 2013, involves the disputed validity of a License Agreement entered into between New Sunshine, LLC ("New Sunshine") and Melania Marks. Plaintiffs ask the Court to declare the Agreement void and unenforceable. Melania Marks asks the Court to declare the Agreement valid and enforceable.

Plaintiffs have informally requested the deposition of Mr. Trump in the case. Mr. Trump is not a party in the case. He is not a party to the License Agreement. He did not sign the License Agreement, either in a representative capacity or in his individual capacity. He was not involved in negotiating the contract, nor in its performance. He is not a member or manager of

Melania Marks, nor of Melania Marks Managing Member Corporation. He is not, and has never been, an officer, employee, agent, owner, or member of the board of managers of Melania Marks. His only connection to Melania Marks is as the husband of its manager and owner, Melania Trump.

Plaintiffs have not shown, and cannot show, that Mr. Trump's testimony is relevant and reasonably calculated to lead to the discovery of admissible evidence. They have failed to demonstrate, and cannot demonstrate, that Mr. Trump possesses any unique or superior personal knowledge of the relevant facts or discoverable information in this case. Plaintiffs have not shown, and cannot show, that the testimony they seek from Mr. Trump is otherwise unavailable from other witnesses who were directly involved in the events involved in this case and which will be the subject of the upcoming trial. Plaintiffs' request to depose Mr. Trump is thus improper and should be denied.

## FACTS

Discovery performed in the case so far demonstrates that the requested deposition of Mr. Trump should not be permitted. Plaintiffs theorize in this case that because Stephen Hilbert ("Mr. Hilbert") and Mr. Trump knew each other and had been involved in a prior business transaction, Mr. Hilbert therefore caused New Sunshine to enter into the License Agreement in question on terms favorable to Melania Marks and adverse to New Sunshine's interests. Mr. Hilbert was the CEO of New Sunshine. Apparently, he was removed from exercising any authority on behalf of New Sunshine's parent entity. This was unknown to Melania Marks until it was finally revealed to Melania Marks months after the License Agreement was signed, and partially performed. There is no evidence that any such conspiracy or compromise of interests ever occurred. The evidence is all to the contrary.

All of the individuals who were involved in the negotiations of the License Agreement have already been deposed, except for Scott Matthews ("Mr. Matthews"). Mr. Matthews was New Sunshine's former legal counsel, and Plaintiffs will be deposing him next week. These witnesses have confirmed that Mr. Trump had nothing to do with negotiating or performing this transaction. That Mr. Trump may have had social or other business interactions with Mr. Hilbert has no bearing on whether *this* License Agreement is enforceable or not.

One of the individuals who was involved in the negotiations of the License Agreement is Cathy Glosser ("Ms. Glosser"), Vice President of Licensing for the Trump Organization. Ms. Glosser has testified in her deposition regarding Mr. Trump's lack of involvement:

> A: [H]e [Stephen Hilbert] may have spoken to Donald early on, but Donald was really not a part of it at all. It was really – it was a Melania deal.
>
> \* \* \*
>
> Q: That's not reference to Donald Trump specifically?
>
> A: No. I don't think there is any reference to Donald Trump in any of this.
>
> Q: I guess when it says Trump –
>
> A: It's not a reference to Donald Trump.
>
> Q: I want to clarify.
>
> A: This deal, just to clarify, has nothing to do with Donald Trump. It's Melania's deal.

(Glosser Depo., pp. 29-30 and 54, attached hereto as <u>Exhibit A</u>).

When Mr. Hilbert was deposed in this case by Plaintiffs on October 9, 2013, Mr. Hilbert likewise testified that this was "Melania's deal," and that while Mr. Hilbert did in fact meet with

Melania Trump to discuss the transaction and the License Agreement, he did not have any such discussions with Mr. Trump.[1]

Plaintiffs also have taken the deposition of Melania Trump in this case on September 11, 2013. Mrs. Trump testified as follows:

> Q: Do you know if Steve Hilbert ever directly talked to Donald Trump about the terms of the license agreement during the time the license agreement was being negotiated?
>
> A: This was my deal, and it was all business deal. So my husband has nothing to do with it.
>
> Q: So you are saying that, to your knowledge, Steve Hilbert and Donald Trump never discussed the license agreement in the course of negotiations?
>
> A: No.
>
> \* \* \*
>
> Q: And did you ever talk to your husband about Eric Weber's authority to sign the agreement?
>
> A: No.
>
> Q: And were there any other occasions where your husband had input into the negotiations?
>
> A: No.

(Melania Trump Depo., pp. 79-80, 101, attached hereto as <u>Exhibit B</u>).

The License Agreement was executed on behalf of New Sunshine by its President, Eric Weber ("Mr. Weber"). Mr. Weber helped structure the License Agreement and its terms. He guided New Sunshine during its performance of the License Agreement. When deposed in this case by Plaintiffs' counsel, Mr. Weber testified:

---

[1] The transcript of Mr. Hilbert's deposition will not be available until October 16, 2013.

> Q: Did Donald Trump have any involvement with the license agreement and/or the product line outside of the connection to Celebrity Apprentice [where the Melania Marks product had been promoted][2]?
>
> A: Not to my knowledge.
>
> Q: Did he ever sit in on any meeting regarding the terms of the license agreement?
>
> A: Not that I participated in.
>
> Q: Did he have any substantive input on the terms of the license agreement?
>
> A: Not that I'm aware of.

(Weber Depo., p. 211, attached hereto as Exhibit C)

Section 5(B)(ix) of the License Agreement provides that New Sunshine will sell the skincare products at wholesale prices to affiliates of Melania Marks and/or Donald Trump, including his golf properties, for resale at their retail outlets or to be otherwise used by them for promotional purposes. Section 13 of the License Agreement requires New Sunshine to obtain insurance as required in Schedule A. Schedule A-5 of the License Agreement requires Donald Trump to be added as an additional insured. To the extent Plaintiffs contend that this language in the License Agreement serves as an alternative basis for deposing Mr. Trump, that position is unsupported.

Jonathan Gross, another individual involved in the negotiations, testified in his deposition that Mr. Trump was named as an additional insured under the License Agreement merely to provide Mr. Trump with insurance protection if he was incorrectly named as a defendant in litigation. (Gross Depo., pp. 132-34, attached hereto as Exhibit D). The reference to Mr. Trump as an additional insured has no effect on whether the License Agreement is enforceable or not.

---

[2] Once again, the mere fact that Melania Marks' product was promoted on the Celebrity Apprentice television show has no bearing on whether the License Agreement itself is enforceable or not.

5

Its lack of relevance is underscored by the deposition testimony of multiple witnesses confirming that Mr. Trump had nothing to do with negotiating or performing this transaction.

Moreover, Mrs. Trump already has explained in her deposition that the provision in the License Agreement concerning the sale of skin care products to Donald Trump properties at wholesale prices was included in the contract at New Sunshine's request - not Melania Marks' request – so that the product could be sold in the Trump hotels and Trump business properties. (Melania Trump Depo., p. 103, included at <u>Exhibit B</u>). However, the product was never sold to either Donald Trump or his properties because (1) an exclusive sale arrangement ultimately was entered into with Lord & Taylor department stores, and (2) New Sunshine declared the contract void "and then everything stopped." (*Id.*). In short, the references to Mr. Trump in the License Agreement simply do not justify the taking of his deposition in this case.

## ARGUMENT

It is well settled that discovery under Rule 26 of the Federal Rules of Civil Procedure "is not without limits." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). "A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *Id. See also H.H. ex rel Hough v. Indiana Bd. of Special Educ.*, 3:06-CV-551TLS, 2007 WL 2914461, at *4 (N.D. Ind. Oct. 3, 2007) (noting as additional consideration that the party seeking discovery had ample opportunity by discovery in the action to obtain the information sought). This Court has broad discretion to deny Plaintiffs' attempt to depose Mr. Trump, and should exercise that discretion here. *See* FED. R. CIV. P. 26(c) (stating that court "may make any order which justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery not be had"). *See also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (holding that "[d]istrict courts have broad discretion in matters relating to discovery").

As the discovery establishes, Mr. Trump is not a party to this action. Neither is he a party to the License Agreement at issue. He is not an officer, director, member, owner, employee, or agent of any of the parties to this action, including Melania Marks. He was not involved in the negotiations of the License Agreement or the activities that followed after its execution. Mr. Trump is the husband of Melania Marks' President, Mrs. Trump, and also happens to be a well-known figure with a high-profile image. At worst, Plaintiffs are pursuing Mr. Trump's testimony simply because of his perceived "star power" and celebrity status. At best, Plaintiffs' effort to depose Mr. Trump is nothing more than a fishing expedition. These are not sufficient reasons to subject Mr. Trump to a deposition.

This Court has recognized that "'high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts[.]'" *Meharg v. I-Flow Corp.*, 108-CV-0184-DFH-TAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009) (citation omitted).[3] In considering whether a high level executive can be deposed, courts may consider "whether the executive has unique or personal knowledge of the situation." *Id*. Courts have precluded the depositions of high level executives who are officers of a party in the action. *See Patterson*, 281 F.3d at 681-82 (affirming district court's

---

[3] *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535 (S.D. Ind. 2002), is not to the contrary and does not support Plaintiffs' request for Mr. Trump's deposition. There, the executive had personal knowledge of and was actually involved in relevant matters for which he was going to be deposed. *See id. See also Meharg*, 2009 WL 1404603, at *2 (allowing deposition of executive where agreement that had become subject of legal dispute was signed by him). Plaintiffs have made no such showing here.

refusal to allow high-ranking executive to be deposed; observing that "[t]he requested deposition of Miller would have been a quite costly and burdensome means for determining whether he had information bearing on Patterson's termination."). The rationale applies with even greater force here given Mr. Trump's tenuous connection to this lawsuit, namely, his marital status. Plaintiffs have failed to demonstrate that Mr. Trump possesses any unique or superior personal knowledge of the relevant facts or discoverable information in this case.

The need to protect Mr. Trump from abusive, harassing depositions aside, "[d]iscovery under Rule 26 is not an invitation to the proverbial fishing expedition." *See Hough*, 2007 WL 2914461, at *4. Such a fishing expedition is apparent here given Mr. Trump's lack of direct involvement in the events giving rise to the parties' dispute and which will be the subject of the upcoming trial. The witnesses who negotiated the License Agreement have already testified that Mr. Trump had nothing to do with negotiating or performing this transaction. Mr. Trump's testimony is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Rather, Mrs. Trump, Cathy Glosser, Jonathan Gross, Stephen Hilbert, Eric Weber, and Scott Matthews, among others, are the witnesses with direct personal knowledge of the circumstances surrounding the License Agreement. Plaintiffs have had full and fair opportunity to conduct the depositions of all of these witnesses. Plaintiffs have not shown that the testimony they seek from Mr. Trump is otherwise unavailable from these other witnesses, who have already been deposed or will be deposed. To subject Mr. Trump to a deposition now, on the eve of trial, would be unnecessary, unreasonable, and duplicative given the scope of discovery conducted to date.

Finally, the burden and expense associated with Mr. Trump's deposition will far outweigh any benefit alleged by the Plaintiffs. Mr. Trump is a New York resident. As a non-party, he is beyond the subpoena power of this Court. To the extent he could be required to appear for a deposition, it would have to be conducted in New York where he resides. The parties will be forced to expend unwarranted time and resources flying their counsel to New York to conduct the deposition of a witness who is unlikely to have any discoverable information and whose testimony is and was obtainable from numerous other sources.

## CONCLUSION

For all these reasons, Plaintiffs' request for Mr. Trump's deposition is improper and should be denied.

Respectfully submitted,

s/ Norman T. Funk
Norman T. Funk, Atty. No. 7021-49
Libby Y. Goodknight, Atty. No. 20880-49
Bryan S. Strawbridge, Atty. No. 29076-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204-2079
Telephone: (317) 636-4341
Facsimile: (317) 636-1507
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

*Counsel for Melania Marks Skincare, LLC*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on October 11, 2013, a copy of the foregoing ***Defendant's Response in Opposition to Plaintiffs' Informal Request for Deposition of Non-Party Donald J. Trump*** was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

  Kevin C. Tyra
  THE TYRA LAW FIRM, P.C.
  kevin.tyra@tyralaw.net

  Jerry M. Padgett
  THE TYRA LAW FIRM, P.C.
  jerry.padgett@tyralaw.net

                s/ Norman T. Funk
                Norman T. Funk

KD_5685869_2.docx