IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANT CAPITAL, LLC, and<br>NEW SUNSHINE, LLC<br><br>    Plaintiffs and<br>    Counterclaim Defendants,<br><br>    v.<br><br>MELANIA MARKS SKINCARE, LLC<br><br>    Defendant and<br>    Counterclaim Plaintiff. | CASE NO. 1:13-cv-0873-JMS-DML |

### DEFENDANT'S STATEMENT IN OPPOSITION TO PLAINTIFFS' MOTION TO CONTINUE TRIAL DATE

Melania Marks Skincare, LLC ("Melania Marks") opposes Plaintiffs' Motion to Continue the Trial Date for the following reasons:

1.  This action was initiated by Plaintiffs filing their Complaint for Declaratory Judgment in the Marion County, Indiana Superior Court on May 2, 2013. The Complaint requested the Court to enter a declaratory judgment that the License Agreement entered into between New Sunshine, LLC and Melania Marks be declared void and unenforceable.

2.  Plaintiffs' Amended Complaint was filed in this action on May 14, 2013. The Amended Complaint contains two Counts. Count I requests declaratory relief. Count II requests "a temporary and permanent injunction enjoining Melania Marks Skincare from attempting to enforce the License Agreement in any manner."

3.  The case was removed from state court to this Court on May 29, 2013 [Document 1].

4. On June 3, 2013, Plaintiffs filed a Motion for Temporary Restraining Order [Document 11] in which they requested a temporary restraining order and/or a preliminary injunction to prevent Melania Marks from attempting to enforce the License Agreement pending a determination by this Court as to whether the License Agreement is an enforceable agreement. On the same date, Plaintiffs filed their Brief in support of their Motion for Temporary Restraining Order [Document 12], arguing that "(t)he essence of Plaintiffs' claim for a temporary restraining order is that the License Agreement is void because Steven C. Hilbert had no authority to cause New Sunshine to enter into the License Agreement."[1] Their Supplemental Brief in support of the Motion for Temporary Restraining Order was filed June 5, 2013 [Document 15]. On June 13, 2013 the Parties filed their Joint Stipulation to Stay Arbitration (Exhibit 20) pending the final determination by this Court as to the enforceability of the License Agreement as a binding and enforceable contract.

5. On June 14, 2013 [Document 22] the Parties filed their Joint Case Management Plan [Document 22]. The Parties agreed in the Plan that they would serve all written discovery on or before June 28, 2013 and complete all discovery by September 15, 2013. The Plan requires written discovery to be served in sufficient time prior to the discovery cutoff date so that responses would be served before the cutoff date. The Parties also jointly requested that this case be tried in October, 2013. The Parties clearly understood that discovery would have to be accelerated in this case to meet the trial date.

6. The Case Management Plan was approved by the Court on June 18, 2013 [Document 24]. Later, the Parties agreed to extend the discovery date to October 25, 2013. [Document 53].

---

[1] The License Agreement was executed on behalf of New Sunshine by Eric Weber, New Sunshine's President, and not by Mr. Hilbert. Mr. Weber was authorized to execute the License Agreement by appropriate resolution of the New Sunshine board of managers and by New Sunshine's established operating procedures.

2

7. On June 28, 2013 – the last day permitted by the Case Management Plan, and nearly two months after filing this action – Plaintiffs served their First Request for Production and First Interrogatories. Two and a half months later, on September 10, 11, and 12, they took their first three depositions in the case.

8. On October 1, 2013, Plaintiffs served their Second Request for Production (Exhibit 1). Because the Second Request was served after the June 28, 2013 cutoff date for serving written discovery, and because the responses would not be due until after the revised discovery cutoff date of October 25, 2013, Defendant objected to the Second Request for Production. During a discovery conference with the Court on October 3, 2013, the Court authorized the Second Request for Production to be served, but ordered that the Request be revised and limited because of when it was being served. The Court specifically admonished New Sunshine's counsel that liberal discovery would not be permitted given the approaching trial date and the timing of when the Second Request for Production was being served. The Defendant was ordered to use its best efforts to produce discoverable documents in response to the revised Second Request (which the Court had not yet seen when issuing its Order) on or before the October 25th discovery cutoff date.

9. On October 4, 2013, Plaintiffs served their Amended Second Request for Production (Exhibit 2). Defendant is in the process of responding to the Amended Second Request, and will serve its Responses and the documents which it deems discoverable on or before the discovery cutoff date of October 25, 2013.

With the foregoing as background, the Defendant now responds to the specific issues raised by Plaintiffs in their Motion to Continue the Trial Date.

ISSUE 1. Defendant is in the process of attempting to locate those documents which are in the Defendant's possession, custody or control and which are responsive to the Amended Second Request for Production. The Defendant expects to be able to produce the documents which Defendant believes are discoverable on or before the discovery cutoff date of October 25, 2013. The Defendant believes that some of the categories which have been requested exceed the limited scope permitted by the Court during the October 3rd discovery conference. Based on what it now knows, the number of documents which will be produced will be reasonably limited in number.

ISSUE 2. On August 2, 2013, Defendant served its initial Response to Plaintiffs' First Request for Production, and a CD containing 1,295 documents. Defendant did not provide a privilege log because no documents were withheld based on privilege. Subsequently, Defendant supplemented its response by serving a CD with additional documents and a privilege log. Thereafter Plaintiffs objected to Defendant having withheld some documents which Plaintiffs did not believe were privileged. On October 14, 2013, Defendant produced the documents in dispute. Defendant believes this discovery dispute has been resolved.

By way of further explanation, none of the documents produced on October 14, 2013, should have any bearing on the completion of the Hilberts' depositions taken by Plaintiffs on October 9, 2013. Defendant disagrees with Plaintiffs' assertion that "counsel for Steve Hilbert reserved the right to object to the resumption of Steve Hilbert's deposition based on a line of questioning related to the previously withheld documents by Defendant." Mr. Hilbert was not questioned by Plaintiffs' counsel about anything related to the very limited number of documents which the Defendant had previously withheld from production under a claim of privilege, and which have now been produced.

ISSUE 3.   This issue has been resolved.  Ms. Pasternack's deposition is scheduled for October 23, 2014.

ISSUE 4.   The request for the deposition of Aimee Preston was only recently communicated to the undersigned counsel.  Ms. Preston is no longer employed by the Defendant.  She apparently lives in California.  She is beyond the Defendant's control concerning when, where, or if her deposition is to be taken.

ISSUE 5.   The issue of Mr. Trump's deposition is now before the Court.  For the reasons previously explained, the Defendant does not believe Mr. Trump's deposition is appropriate discovery in this case, given the testimony of multiple witnesses already deposed that he had no involvement in negotiating or performing this transaction.  The deposition of Scott Matthews is scheduled to be taken by Plaintiffs on October 16, 2013.  Mr. Matthews, a lawyer, was New Sunshine's general counsel.  He negotiated the License Agreement on behalf of New Sunshine.  Presumably, Mr. Matthews also will testify that Mr. Trump was not involved in this transaction.  A deposition of Mr. Trump in this case is unwarranted when six other witnesses – Eric Weber, Stephen Hilbert, Cathy Glosser, Jonathan Gross, Melania Trump, and Scott Matthews – all will have testified Mr. Trump was not involved.  Mr. Hilbert already has testified in his deposition concerning his past business dealings with Mr. Trump involving the purchase of the General Motors building in New York in the early 1990s, their occasional business friendship, and their casual, infrequent social contracts.  These are not secrets.  They also are irrelevant to any of the issues in this case.  Mr. Trump's testimony can add nothing new to what has already been discovered from others.

ISSUE 6.   Plaintiffs knew before taking Jonathan Gross' deposition that he was Melania Marks' lawyer in this transaction and that he might invoke the attorney-client privilege and

5

refuse to answer questions which invaded that privilege. Mr. Gross did not invoke the privilege concerning his dealings with third parties, including New Sunshine, but he did invoke the privilege concerning his communications with his client and the knowledge he acquired in the context of the attorney-client relationship with his client. That is why he refused to answer whether the Trump Organization is an incorporated entity, the example which Plaintiffs used in their Motion to Continue Trial Date. That information is already known to Plaintiffs from the public domain. Additionally, Plaintiffs obtained the information they wanted concerning the status of The Trump Organization when they deposed Melania Trump. Mrs. Trump explained that the Trump Organization is a corporation that is her husband's business, that Melania Marks is not a subsidiary of the Organization, and that Melania Marks is not under the corporate umbrella of The Trump Organization. (Exhibit 3, pp. 16-17). To use Mr. Gross' refusal to answer a question about the nature of the Trump Organization as a basis for a trial continuance is completely inappropriate when Plaintiffs have obtained the information they want from another witness and from the public domain. Likewise, a court reporter's refusal to provide Plaintiffs with a transcript of the deposition because of an apparent billing dispute is not a basis for continuing the trial. These are insubstantial reasons for requesting a trial continuance.

As for compelling further testimony from Melania Trump, there is no Motion before the Court requesting that relief. Plaintiffs' counsel repeatedly asked questions of Mrs. Trump during her deposition about damages. Damages are not at issue in this case. Damages are to be addressed in arbitration in New York if, and only if, this Court concludes that the License Agreement is valid and enforceable (Exhibit 3, pp. 108-109; 122-123). Additionally, Mrs. Trump could not answer questions concerning another licensing transaction to which she or her company are a party because, to do so, would have violated confidentiality provisions in that

agreement and subjected Mrs. Trump to potential liability for breaching those provisions. Whatever *another* license agreement provides also is irrelevant to whether *this* License Agreement is void or valid. (Exhibit 3, pp. 31-33; 93-94). If Plaintiffs want to file their Motion to Compel concerning questions certified in Mrs. Trump's deposition, then they should file their Motion  A trial continuance, however, is not an appropriate alternative to a discovery Motion they have chosen not to file and which will be without merit.

ISSUE 7.    The License Agreement at issue in this case was negotiated between New Sunshine and Melania Marks in 2011 and 2012. It was executed on November 1, 2012. Following execution, the Agreement was partially performed by both parties. Finally, in March, 2013, Merchant Capital informed Melania Marks that the contract was void. The "recent" real estate transaction by which Mr. or Mrs. Hilbert apparently sold real estate in St. Martin to some person or some entity having some connection to Mr. Trump is completely unrelated by both time and subject matter to the transaction involved in this case. However, Plaintiffs could have asked about that transaction during Mrs. Trump's deposition on September 11, 2013, and she would have told them what she knows, if anything.

The fact is that Mrs. Trump was not *asked* about that transaction during her deposition. Plaintiffs' questioning of Mrs. Trump concerning her relationship with the Hilberts and her husband's relationship with the Hilberts is set forth in pages 39-43 of her deposition (Exhibit 3). She was asked *nothing* in her deposition that would have required her to disclose the St. Martin transaction. She was neither the seller nor the buyer in the transaction. She was not involved in any way in the transaction. She has never been to the St. Martin property other than the one time to which she testified in her deposition, which was many years ago. The argument in the Motion for Trial Continuance that "the Hilberts' property in St. Martin was recently

purchased by the Trumps" is an incorrect and misleading statement. It is patently false. Melania Trump did not purchase it. If Plaintiffs wish to ask the *Hilberts* questions about the purchase and sale of that property, Plaintiffs may do so subject to objections by the Hilberts' counsel. Mr. Hilbert's deposition was adjourned, and not concluded. He resides in Indiana. Mrs. Trump resides in New York. But failure to question Mrs. Trump about a recent sale of property in St. Martin nearly a year after the License Agreement at issue was signed is not a basis to reopen the record in Mrs. Trump's deposition to ask questions which could have been asked on September 11, 2013. Nor is that failure a basis to continue the trial in this case.

ISSUE 8. As explained earlier in this Statement, the parties knew from the outset of this case that they would be on an accelerated discovery schedule. Plaintiffs waited until October 9th to take the Hilberts' depositions. Any Motion for Protective Order which is filed concerning the Hilberts' testimony is a matter between the Hilberts and the Plaintiffs. That should not delay the trial of this case.

ISSUE 9. Again, discovery disputes between the Hilberts and the Plaintiffs should not delay the trial of this case. The Hilberts' depositions could have been taken months ago. They were identified on Plaintiffs' Preliminary Witness Lists filed in this case on June 28th. Plaintiffs waited over three months after the Preliminary Witness Lists were filed to take their depositions. In a case in which declaratory and injunctive relief are requested, trial should not be vacated because Plaintiffs belatedly pursued discovery they knew they needed from the outset.

## CONCLUSION

Defendant will be ready to try this case on November 12, 2013. The case should proceed to trial at that time. The parties have known from the start of this case that they would be under a tight calendar to get things done. Defendant proceeded with discovery on that basis. Plaintiffs

did not.  The deposition problems described by Plaintiffs in their Motion to Continue Trial are not of the Defendant's making.  Jonathan Gross cannot be required to answer questions which require him to violate the attorney-client privilege.  He was deposed more than a month ago and Plaintiffs have done *nothing* to bring issues in his deposition before the Court except to request a trial continuance.  Likewise, Mrs. Trump should not be compelled to testify as to damages in a case where damages are not at issue, or to disclose confidential provisions in another license agreement unrelated to the License Agreement at issue in this case.  While the parties have jointly agreed to postpone the New York arbitration until the issues in this case are resolved, that stay is depriving the Defendant from pursuing its damage claims if this Court determines that the License Agreement is valid and enforceable.  Whatever brief delays have resulted in the document production process have been resolved.  Karen Pasternack is now available for her deposition next Wednesday.  There is sufficient time remaining to prepare this case for trial starting November 12, 2013.

The Defendant's undersigned counsel plans to spend several months in Florida beginning in early January, 2014 and extending through early April of that year.  If this Court grants Plaintiffs' Motion for Trial Continuance and resets this case for trial in February, 2014, as Plaintiffs have requested, the undersigned counsel will alter his winter plans and try the case whenever the Court requires.  However, for the reasons set forth hereinabove, the Defendant respectfully requests that the Court deny Plaintiffs' Motion for Trial Continuance so that this case can be tried as currently scheduled.  Substantial discovery has been performed, the issues before the Court are limited, the declaratory and injunctive relief requested by Plaintiffs call for an early trial, and whatever discovery issues remain do not warrant vacating the current trial setting.

Respectfully submitted,

s/ Norman T. Funk
Norman T. Funk, Attorney No. 7021-49
Libby Y. Goodknight, Attorney No. 20880-49
Bryan S. St7rawbridge, Attorney No. 29076-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204-2079
Telephone:  (317) 636-4341
Facsimile:  (317) 636-1507
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

*Counsel for Melania Marks Skincare, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2013, a copy of the foregoing **Defendant's Statement in Opposition to Plaintiffs' Motion to Continue Trial Date** was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Kevin C. Tyra
THE TYRA LAW FIRM, P.C.
kevin.tyra@tyralaw.net

Jerry M. Padgett
THE TYRA LAW FIRM, P.C.
jerry.padgett@tyralaw.net

s/ Norman T. Funk
Norman T. Funk

KD_5694199_1.DOCX

10