UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANT CAPITAL, LLC and ) <br> NEW SUNSHINE, LLC, ) <br> ) <br>     Plaintiffs / Counter-claim ) <br>     Defendants, ) <br> )    CAUSE NO.: 1:13-cv-00873-JMS-DML <br> ) <br> v. ) <br> ) <br> MELANIA MARKS SKINCARE, LLC, ) <br> ) <br>     Defendant / Counter-claim ) <br>     Plaintiff. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION TO CONTINUE THE TRIAL DATE**

Plaintiffs Merchant Capital, LLC ("Merchant Capital") and New Sunshine, LLC ("New Sunshine") (collectively "Plaintiffs"), by counsel, for their Reply In Support Of Their Motion to Continue the Trial Date, state the following:

**INTRODUCTION**

Plaintiffs filed their Motion To Continue The Trial Date [Dkt. 61] ("Motion") on October 11, 2013, essentially outlining nine issues why they believe the current trial date of November 12, 2013 is impracticable and should be continued. Defendant Melania Marks Skincare, LLC filed its Statement In Opposition To Plaintiffs' Motion To Continue Trial Date [Dkt. 64] ("Opposition") on October 15, 2013, also organized in the nine issues asserted in the Motion.

Plaintiffs believe that on the face of the Motion and Opposition, the information provided is ample to justify the continuance Plaintiffs seek. However, Plaintiffs believe several statements in the Opposition need to be addressed and corrected, and new information the Defendant disclosed just this week, bearing on the Motion, needs to be brought to the Court's attention.

Before turning to the enumerated issues, paragraphs 1-9 of the Opposition provide its perspective on the procedural facts of the case. The Opposition states in paragraph 7 that "Two and a half months [after Plaintiffs served written discovery on the Defendant], on September 10, 11, and 12, they took their first three depositions in the case." The implication seems to be the Plaintiffs were dilatory in scheduling and taking the depositions. However, Defendant did not complete its initial production of documents until August 1, 2013, producing 7978 pages of documents by that time. In the meanwhile, starting at least as early as July 29, 2013, the Plaintiffs were proposing deposing Defendant's representatives, Melania Trump, Cathy Glosser, and former Trump counsel Jonathan Gross, in New York on August 19-21 or September 9-11. Defense counsel initially stated, on July 29, that either set of dates would work, so Plaintiffs' counsel proposed conducting the depositions on August 18-21. Thereafter, defense counsel notified Plaintiffs' counsel that under no circumstances would the defense witnesses be made available at any time before September 9-11, despite numerous proposals by Plaintiffs' counsel to agree on dates before September 9. The point is that Plaintiffs' counsel had made every effort to depose the three New York witnesses earlier than September 9-11, but were unable to do so.

Notably, in paragraph 9 of the Opposition, the Defendant acknowledges that it "is in the process of responding to the Amended Second [Document] Request and will serve its Responses and the documents which it deems discoverable on or before the discovery cutoff date of October 25, 2013," less than three weeks before trial.

**<u>ISSUE #1</u>**

As indicated in the preceding paragraph, the Defendant's response implicitly acknowledges that it will be producing an as-yet-unknown number of documents less than three weeks before trial. The Defendant also notes that it still believes the Amended Second Request

"exceed the limited scope permitted by the Court during the October 3rd discovery conference." While Plaintiffs look forward to working with defense counsel on these issues, the Opposition implicitly acknowledges there may well be another discovery dispute on the horizon.

**ISSUE #2**

In the Motion, Plaintiffs described their efforts to obtain a complete production in response to their First Request for Production of Documents, and as of the filing of the Motion, the supplemental production from Defendant was still forthcoming. A supplemental production was served on October 14, 2013. Among other things, the Opposition disputed Plaintiffs' concerns that it was necessary to go forward with the depositions of Steve and Tomisue Hilbert without having received the supplemental production of previously-withheld documents. As the Opposition put it, "none of the documents produced on October 14, 2013 should have any bearing on the completion of the Hilberts' depositions taken by Plaintiffs on October 9, 2013. . . . Mr. Hilbert was not questioned by Plaintiffs' counsel about anything related to the very limited number of documents which the Defendant had previously withheld from production under a claim of privilege, and which have now been produced."

Plaintiffs strongly disagree with this characterization. Attached hereto as **Exhibit 1** are excerpts from the supplemental production, including defense counsel's cover letter, and produced documents stamped TRUMP 9432, 9435-41, 9444-5, 9450-62, 9479, 9487, and 9492.

First, there are a number of redactions to communications in which, so far as Plaintiffs can tell, no attorneys participated (for example, the top e-mail in TRUMP 9432, TRUMP 9439-9441, TRUMP 9444-9445, and TRUMP 9450), and therefore, there is no apparent basis for having asserted a privilege in the first place.

Second, there are a number of documents for which there is no imaginable privilege (for example, TRUMP 9435-9438, and TRUMP 9451-9462), raising the question of why they were withheld in the first place. There are many other examples of this in the supplemental production, but these examples should provide the Court with a sufficient illustration of the problem.

Third, contrary to the defense representation, new information relating to Steve Hilbert is contained in TRUMP 9479: Cathy Glosser related on September 14, 2011 that "In regards to an advance, I pushed Steve on this and he really does not want to pay anything. He said that any of the above options are more generous than another company would offer." Plaintiffs' expert, Erik D. Rosenstrauch, in his report filed with the Court [Dkt. 41], has opined that the License Agreement was one-sided against New Sunshine, including the provision for a $1,000,000 advance to Defendant, which Mr. Rosenstrauch characterized as "highly unusual." It is undersigned counsel's recollection that in his deposition, Mr. Hilbert had emphatically defended the terms of the License Agreement, contending they were very fair to New Sunshine. Having TRUMP 9479 at the time of Mr. Hilbert's deposition would have afforded the Plaintiffs the basis for challenging Mr. Hilbert's testimony on this issue.

It is further undersigned counsel's recollection that Mr. Hilbert had also testified that he had not discussed the terms of the License Agreement with Donald Trump (who is the subject of Plaintiffs' Status Report Regarding Depositions, Dkt. 60, and Defendant's Response In Opposition To Plaintiffs' Informal Request For Deposition Of Non-Party Donald Trump, Dkt. 62) during its negotiations. However, in TRUMP 9487, Ms. Glosser related to Ms. Trump on September 13, 2011 that "Steve indicated that when he spoke with Donald about a possible advance it was in regards to a straight royalty only deal, not a split equity/royalty deal." This,

too, would have been a point Plaintiffs would have liked to have raised with Mr. Hilbert during his deposition to challenge his testimony.

Similarly, TRUMP 9492 reveals discussions Mr. Trump had with Allen Weisselberg about the prospects for the company and the structure of compensation for the Defendant.

The foregoing information in TRUMP 9487 and 9492 also, of course, goes directly to Plaintiffs' desire to take the deposition of Mr. Trump, when those around him have denied his involvement in the development of the License Agreement, yet the documentation indicates otherwise.

**ISSUE #3**

As stated in the Opposition, Karen Pasternack's deposition is being arranged by videoconference for October 23, 2013 (not 2014, which wouldn't do us much good).

**ISSUE #4**

As stated in the Opposition, Ms. Preston "is beyond Defendant's control concerning when, where or if her deposition is to be taken." Plaintiffs are doing what they can to arrange this deposition as promptly as possible, again presumably by videoconference.

**ISSUE #5**

The issue as to whether Plaintiffs will be able to depose Donald Trump remains pending. The Opposition asserts that "six other witnesses – Eric Weber, Stephen Hilbert, Cathy Glosser, Jonathon Gross, Melania Trump, and Scott Matthew – all will have testified Mr. Trump was not involved." Unfortunately, their testimonies are all contradicted both by the paper trail previously cited in Dkt. 60 and in the newly-produced documents, TRUMP 9487 and 9492, as discussed under Issue #2, above.

**ISSUE #6**

Plaintiffs used the example of Mr. Gross invoking attorney-client privilege to refuse to answer a question about The Trump Organization's business form was merely an illustration of the extreme lengths to which Mr. Gross took the privilege. There are many other examples of information Mr. Gross refused to provide that Plaintiffs may not otherwise be able to obtain.

Plaintiffs are not asserting, as the Opposition says, that it cannot get a copy of the Gross transcript due to a "billing dispute," rather they have requested the invoice so they can pay the court reporter and obtain a copy of the Gross deposition transcript, but the reporting service has not yet sent the invoice to Plaintiffs' counsel. Plaintiffs note that an excerpt from Mr. Gross' transcript is attached to Dkt. 62. Plaintiffs' counsel's office has left a message for defense counsel asking for a copy of the transcript to expedite matters, but has not heard back from defense counsel.

As stated in the Motion, among other things, Melania Trump refused to provide information and/or was instructed not to provide information about the terms of the one other noteworthy licensing deal involving Melania Trump, which was the licensing of a line of jewelry and timepieces. The Defendant has taken the position the License Agreement is a fair, arm's length transaction, while Plaintiffs have argument it was unfair and one-sided against New Sunshine. Plaintiffs believe the disclosure of the terms of this other licensing agreement, to compare and contrast to the License Agreement in this matter, is important evidence regarding the issue of whether the terms of the License Agreement were one-sided and unfair to New Sunshine, or whether these terms are typical for this type of business arrangement, particularly as an example of what the Defendant considers fair. If there is a confidentiality provision of the

jewelry licensing agreement, this information can be protected through an already-existing protective order in our litigation [Dkt. 43].

**ISSUE #7**

The Opposition faults Plaintiffs for not asking Ms. Trump about the Trumps' purchase of Le Chateau des Palmiers from the Hilberts, as a basis for raising the issue of that purchase to show the nature of the relationship of the parties to this supposedly arm's-length transaction, particularly when the resort was purchased in a short window of time between Ms. Trump's deposition and the Hilberts' depositions. Of course, Plaintiffs had not learned of the purchase until after Ms. Trump's deposition, because it was not yet in the media, so they couldn't ask Ms. Trump about it.

Ironically, the Opposition suggested that Plaintiffs could ask the Hilberts about the sale of Le Chateau des Palmiers. However, as defense counsel well knows (because he was present), at the Hilberts' deposition, their counsel instructed their clients not to answer even the question whether the resort had been purchased by or on behalf of the Trumps, and the Hilberts' counsel expressed the intention to file a motion for protective order.

**ISSUE #8**

Regarding the impending motion for protective order on behalf of the Hilberts, the Opposition implies some sort of dilatory conduct on Plaintiffs' part because, according to the Opposition, "Plaintiffs waited until October 9th to take the Hilberts' deposition." However, Plaintiffs' counsel first sent an e-mail to defense counsel on August 19, 2013, asking to schedule the Hilberts' depositions. In a telephone conference with Plaintiffs' counsel on August 23, defense counsel advised that because of his Supreme Court argument on September 5 as well as other commitments in September (including the New York deposition trip and the Defendant

taking the depositions of three Merchant Capital witnesses on September 17), the earliest *defense counsel* would be available for the Hilbert depositions would be the week of October 7. On August 23, Plaintiffs' counsel sent an e-mail to the Hilberts' counsel asking for available dates. On September 9, counsel for the Hilberts advised they would be available on October 9.

The Opposition goes on to assert that "Any Motion For Protective Order which is filed concerning the Hilberts' testimony is a matter between the Hilberts and the Plaintiffs. That should not delay the trial of this case." One would hope that a fair opportunity to discover the truth (as we are starting the see in the supplemental production, Issue #2 above) before going to trial is the higher priority.

**ISSUE #9**

The Opposition again implies dilatory conduct by Plaintiffs in not taking the Hilberts' deposition sooner, although as indicated under Issue #8, this is not the case. Again, it is not sufficient for the Defendant to dismiss the disputes impeding their discovery from the Hilberts as simply between the Plaintiffs and the Hilberts, when the evidence has shown that the Hilberts consider the Trumps "good friends" and "great friends," and that, along with their expressed support for the License Agreement and condemnation of Merchant Capital and the current management of New Sunshine, creates common goals between the Hilberts and the Defendant.

**CONCLUSION**

Plaintiffs disagree with the assertion in the Conclusion of the Opposition that "the deposition problems . . . are not of the Defendant's making," considering that, among other things, it was present and former Melania Marks and Trump employees who have refused to answer questions in depositions, along with the Trumps' friends, the Hilberts, and the depositions were impaired by the withholding of material documents until this week.

Plaintiffs regret if, as stated in the Conclusion to the Opposition, a short continuance of the trial may impede defense counsel's three-month hiatus to Florida, but appreciate that defense counsel is willing to return to Indiana for the trial during that time.

Plaintiffs acknowledge the timetable originally contemplated by the parties and the Court, as described in the Opposition, and Plaintiffs wish that the original timetable could accommodate the obstacles to full disclosure and discovery as they have developed, but it can't. As between subservience to an outmoded timetable and the search for relevant information, Plaintiffs ask the Court to allow the latter course.

WHEREFORE, Plaintiffs requests an order continuing the trial date in this matter, and for all other relief the Court may deem just and proper.

Respectfully submitted,

/s/Kevin C. Tyra_____
Kevin C. Tyra (#11883-49)
One of the Attorneys for Plaintiffs,
*Merchant Capital, LLC and New Sunshine, LLC*

Kevin C. Tyra, #11883-49
Jerry M. Padgett, # 27282-49
THE TYRA LAW FIRM, P.C.
355 Indiana Ave.; Suite 150
Indianapolis, IN 46204
Telephone: (317) 636-1304
Facsimile: (317) 636-1343
kevin.tyra@tyralaw.net
jerry.padgett@tyralaw.net

9

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Norman T. Funk
Libby Y. Goodknight
Bryan S. Strawbridge
KRIEG DEVAULT LLP
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

/s/ Kevin C. Tyra_____
Kevin C. Tyra