UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MERCHANT CAPITAL, LLC AND NEW SUNSHINE, LLC | ) ) ) | |
| Plaintiffs, | ) ) | |
| -v- | ) ) | CASE NO. 1:13-CV-00873-JMS-DML |
| MELANIA MARKS SKINCARE, LLC, | ) ) | |
| Defendant. | ) | |

**NON-PARTY SUBPOENA RECIPIENT STEPHEN C. HILBERT'S MOTION FOR ORDER BARRING OR LIMITING TOPICS OF DEPOSITION TESTIMONY**

Non-party Stephen C. Hilbert ("Hilbert") respectfully moves this Court pursuant to Fed. R. Civ. P. 27(c)(1) and 30(d)(1)(B) to enter an order that no further deposition discovery be taken of him pursuant to subpoena because the remaining topics of examination pursued by Plaintiffs' counsel (i) are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this matter, (ii) are improperly designed to take discovery of Mr. Hilbert regarding separate disputes pending in other forums between different parties, and (iii) will result in unreasonable annoyance and harassment of Mr. Hilbert, who is not a party to this action. In further support of his Motion, Mr. Hilbert states as follows:

**INTRODUCTION**

On October 9, 2013, non-party Stephen Hilbert sat for a deposition in this matter pursuant to a third-party subpoena served upon him by plaintiffs Merchant Capital, LLC ("Merchant Capital") and New Sunshine, LLC ("New Sunshine") (together, "Plaintiffs"). During the approximately six hour deposition, Plaintiffs' counsel repeatedly, and over objection, posed an

array of questions to Mr. Hilbert regarding various irrelevant and personally-intrusive topics having nothing to do with the apparent crux of this dispute, i.e. whether the 2012 License Agreement between New Sunshine and the Defendant is valid and enforceable.  The objectionable subjects of Plaintiffs' counsel's inquiries included: (1) the 2013 sale Mr. Hilbert's former personal residence in St. Martin, V.I., (2) Mr. Hilbert's alleged personal and/or social relationship with Donald and Melania Trump, (3) certain real estate transactions that took place over a decade ago between companies that Mr. Hilbert and Mr. Trump were supposedly affiliated with, and (4) certain documents submitted in an unrelated bankruptcy case pending in Indiana.  Beyond lacking any relevance to the narrow disputes before this Court, Plaintiffs' inquiries into these areas were obvious attempts to troll for information in aid of Merchant Capital's and New Sunshine's lawsuits involving Mr. Hilbert in other forums and to harass, annoy, and embarrass him in a case in which he is not a party.  As permitted by Fed. R. Civ. P. 30(d)(3), Mr. Hilbert was instructed not to answer questions on these topics, and Plaintiffs' counsel proceeded to explore other topics.  However, Mr. Hilbert's deposition was not concluded, so as to allow his counsel to seek an order from this Court forbidding discovery into the objectionable subjects under Fed. R. Civ. P. 27(c)(1) and/or 30(d)(1)(B).  Promptly after receipt of the deposition transcript, Mr. Hilbert brought the present Motion.

   Before the deposition was suspended, Plaintiffs' counsel examined Mr. Hilbert at length regarding various issues that are apparently related to the present dispute, and Mr. Hilbert fully answered those questions.  But he should not be required to answer questions in this setting about matters having nothing to do with the narrow issue in dispute between the parties.  Therefore, Mr. Hilbert asks this Court for entry of a protective order prohibiting any further third-party discovery directed toward him, including additional deposition testimony, or in the

alternative, to prohibit Plaintiffs from seeking information wholly unrelated to whether the licensing agreement at issue in the instant litigation is valid and enforceable or, as Plaintiffs contend, is "void and unenforceable." [*See* Dkt. # 1-1 at ¶ 27.]

## I. APPLICABLE STANDARDS

The scope of discovery is broad, but it is not unlimited. Indeed, Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters that are relevant and not privileged. Fed. R. Civ. P. 26(b)(1). Additionally, the same rule prohibits discovery that is duplicative, discovery that can be obtained from a less burdensome source, or discovery where the burden in obtaining it outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(C)(i)(iii). Discovery under Rule 26, "is not an invitation to the proverbial fishing expedition." *McClain v. TP Orthodontics*, No. 3:07-CV-113, 2008 WL 2477578, at *1 (N.D. Ind. June 16, 2008); Fed. R. Civ. P. 26(b)(1).

"A district court should independently determine the proper course of discovery based upon the arguments of the parties." *McClain*, 2008 WL 2477578, at *2. Under 26(c), a protective order is appropriate where "good cause" exists "to protect a party. . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). These limitations, which the Court has broad discretion to enforce, govern the additional information sought by Plaintiffs in the deposition of Mr. Hilbert.

## II. ARGUMENT

According to their Amended Complaint For Declaratory Judgment and Injunctive Relief ("Complaint") (Dkt. #1-1), Plaintiffs commenced this action to obtain declaratory and injunctive relief that a November 1, 2012 License Agreement between the New Sunshine and Defendant Melania Marks Skincare LLC ("Melania") is "void and unenforceable," and, therefore,

Melania's efforts to enforce the License Agreement through arbitration should be enjoined. (*Id.* at 7-9.) In support of their two-count Complaint, Plaintiffs contend, variously, either that the signatory to the License Agreement was not authorized to bind New Sunshine to a contract or that the License Agreement was "grossly unfair" to New Sunshine. (*Id.* at 2-6.)

During Mr. Hilbert's multi-hour deposition, which was conducted pursuant to subpoena, counsel for Plaintiffs repeatedly asked him questions regarding personal and business matters wholly unrelated to the instant litigation. For example, counsel for Plaintiffs repeatedly attempted to seek information regarding the residence in St. Martin that Mr. Hilbert previously owned and insisted on continuing with the line of questioning until Mr. Hilbert's counsel directed Mr. Hilbert not to answer:

> Q. Okay. When or what entity actually had owned Le Chateau des Palmiers in St. Martin?
> []
> MR. TULLY: I'm going to object to this question. Again, Counsel, you're getting into personal issues that, by your own statement of what you claim is relevant, I don't see what the connection is. []

[Hilbert Dep. 41:25-42:1; 42:11-15, Oct. 9, 2013.]

> Q. The specific question I've got or initial question I've got about Le Chateau des Palmiers, did you and Tomisue sell the resort to the Trumps?
> MR. TULLY: I object to that, and that would be one of the subjects of a request for an exclusion of evidence, limitation of evidence, or protective order from this court. So with that intention, I'm going to instruct you not to answer.
> MR. TYRA: All right. And I've got a series of questions regarding the sale this month of Le Chateau des Palmiers apparently by the Hilberts to the Trumps. And if you would like to go ahead and file your motion for a protective order, obviously there are a whole series of questions relating to the transaction, and we will reserve that for a later date.

[Id. 220:16 – 221:13.]

Similarly, Plaintiffs' counsel attempted to ask a series of questions regarding Mr. Hilbert's personal and business relationship with Mr. Trump, including events that are fifteen years removed from the transaction that is the subject of this litigation.

> Q. All right. And in that time period of June or July of 1998 until the beginning of 2011, about how many times did you speak with Donald Trump on the phone?
> MR. TULLY: Same objection to relevance.
> MR. FUNK: Same objection.
> Q. Through that time period, were there any occasions where they stayed at your place or you stayed at theirs, other than you mentioned for the Brickyard, Mr. Trump stayed overnight at your residence, other than that?
> MR. TULLY: Mr. Hilbert, I'm going to object on the ground, again, of relevance; prying into personal details that are, as far as I can tell, extremely remote from anything that's at issue in this case that you're being asked to testify about. . .

[Id. 24:11-25:4.]

> Q. Well, when we talk about Mr. Trump as a partner in purchasing the GM Building, was it Donald Trump or was it the Trump Organization, or some other business entity that was the partner in buying the building?
> MR. FUNK: Objection on the ground of relevance.
> MR. TULLY: Join. You can answer, sir.

[Id. 30:12-19.]

Plaintiffs' counsel also insisted on examining Mr. Hilbert regarding irrelevant bank transactions listed on a filing in an unrelated bankruptcy proceeding, in which Plaintiffs and Mr. Hilbert are adverse, that is currently pending in the United State Bankruptcy Court for the Southern District of Indiana.

> Q. There's an entry for $257,724.23 indicating 12-1-12 book entry transfer of obligation owing to debtor from an entity wholly owned by members, which resulted in a reduction of Tomisue Hilbert's capital account with the debtor and thus arguably constitute a distribution to Tomisue Hilbert by this account. Was this transaction anything to do with the Trumps or any of their related entities?
> MR TULLY: I'm going to object to that question for the reason similar to earlier today. . . []
> A. The answer is no.

[Id. 216:22-217:7; 217:17.]

Lastly, counsel for Plaintiffs indicated at the end of the deposition that, unless prohibited by this Court, he not only intends to subject Mr. Hilbert to further examination regarding the aforementioned irrelevant topics, but also regarding unspecified documents withheld from production by the Defendant in this matter:

> MR. TYRA: [] There's also I believe, some documents that were claimed as privileged by Melania, which it's my understanding there's going to be a supplemental production, and we would reserve the right specifically as to those documents, possibly to resume Mr. Hilbert's deposition.

[Id. 221:7-14.]

Although Mr. Hilbert may be adverse to Plaintiffs in litigation pending in other forums, he should not be subjected to questions as a third-party here about those other matters. They have nothing to do with the narrow dispute between Plaintiffs and Defendants regarding the validity of the License Agreement. Even less relevant are the questions counsel for Plaintiffs attempted to ask Mr. Hilbert regarding his personal and social relationships with the Trumps and the 2013 sale of his residence in St. Martin. It is simply beyond the pale to suggest that the latter topic is somehow relevant to the validity of a 2012 License Agreement.

This Court has repeatedly prohibited discovery that was irrelevant, overbroad, or only meant to annoying, harass, or embarrass. *McClain,* 2008 WL 2477578, at *1 (granting motion for protective order as to inquiries at deposition of nonparty into irrelevant matters, such as business relationships that were unrelated to the claims at issue); *Allison Transmission, Inc. v. DeFeo Mfg., Inc.*, No. 1:11–cv–1175, 2012 WL 5896751, *2 (S.D. Ind. Nov. 21, 2012) (granting motion for protective order and prohibiting irrelevant discovery of third parties unrelated to the specific claims at issue); *U.S. ex rel. Pool v. NMC, Inc.*, No. 2:09–cv–66, 2010 WL 4668790, at *2 (S.D. Ind. Nov. 9, 2010) (quashing subpoena that sought overly broad and irrelevant discovery); *Catt v. Affirmative Ins. Co.*, No. 2:08–CV–243, 2009 WL 1228605, at **5-13 (N.D.

6

Ind. April 30, 2009) (granting protective order as to deposition topics listed in 30(b)(6) deposition subpoena that were overly broad or irrelevant); *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 620 (S.D. Ind. 2002) (denying discovery of information irrelevant to the claims at issue); *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 589 (S.D. Ind. 2000) (same). Mr. Hilbert asks that the Court do the same here and enter a protective order preventing him from having to sit for further deposition in this matter, beyond the almost six hours of examination that he has already endured.

**III.   CONCLUSION**

WHEREFORE, Stephen C. Hilbert moves the Court for a Motion for Protective Order prohibiting Plaintiffs from directing any additional third-party discovery toward him, including any additional depositions. In the alternative, Stephen C. Hilbert moves the Court for a Motion for Protective Order limiting any additional third-party discovery directed to him to relevant topics regarding whether the signatory to the License Agreement between New Sunshine and the Defendant was authorized to execute a binding contract on behalf of New Sunshine, and prohibiting any further examination regarding irrelevant topics such as (1) the 2013 sale Mr. Hilbert's former residence in St. Martin, V.I., (2) Mr. Hilbert's alleged personal and/or social relationship with Donald and Melania Trump, (3) real estate transactions that took place over a decade ago between companies that Mr. Hilbert and Mr. Trump were supposedly affiliated with, and (4) documents submitted in an unrelated bankruptcy case pending in Indiana in which Plaintiffs and Mr. Hilbert's company are adverse.

Dated: October 21, 2013                    Respectfully submitted:

                  _____/s/ __Martin T. Tully_____
                  Martin T. Tully
                  KATTEN MUCHIN ROSENMAN LLP
                  525 West Monroe Street
                  Chicago, IL  60661
                  Telephone: (312) 902-5200
                  Facsimile: (312) 902-1061
                  Email: martin.tully@kattenlaw.com

                  *Counsel for Non-Party Stephen C. Hilbert*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October, 2013, a copy of foregoing was filed electronically. Notice of this filing will be sent CM/ECF system.

      /s/ Martin T. Tully _____
Martin T. Tully