**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MERCHANT CAPITAL, LLC and | ) | |
| NEW SUNSHINE, LLC, | ) | |
| | ) | |
|     Plaintiffs / Counter-claim | ) | |
|     Defendants, | ) | |
| | ) | CAUSE NO.: 1:13-cv-00873-JMS-DML |
| | ) | |
| v. | ) | |
| | ) | |
| MELANIA MARKS SKINCARE, LLC, | ) | |
| | ) | |
|     Defendant / Counter-claim | ) | |
|     Plaintiff. | ) | |

## PLAINTIFFS' PRE-TRIAL EVIDENTIARY MOTION

Plaintiffs Merchant Capital, LLC ("Merchant Capital") and New Sunshine, LLC ("New Sunshine") (collectively "Plaintiffs"), by counsel, for their Pre-Trial Evidentiary Motion as prescribed by the Order of October 9, 2013 [DE #58], hereby requests the Court to enter an order instructing all counsel of record, parties, and witnesses at the trial of this matter (including the obligation of counsel to instruct their witnesses and/or clients before the commencement of each witness' testimony) that they shall not refer in any way to the issues discussed herein.

In support of this Motion, Plaintiffs requests the Court for an Order with regard to the following issues:

**I.**     **Evidence, testimony, or argument that New Sunshine "terminated" the License Agreement**

Plaintiffs request the Court for an Order in Limine barring evidence, testimony, or argument that New Sunshine has "terminated" the License Agreement. Defendant has repeatedly made the assertion that New Sunshine has "terminated" the License Agreement with Melania Marks Skincare, LLC ("Melania Marks").

For instance, the following deposition testimony demonstrates the repeated attempts to portray New Sunshine as having terminated the License Agreement:

```
17  Q  Had you and Angie talked about the agreement from
18     time to time before it was terminated?
19  A  I don't believe it was terminated, so if you'd like
20     to reask the question.
21  Q  Tell me your understanding of what did happen to
22     it.
23  A  My understanding is we shipped the product, and
24     we'll have the lawyers and the courts figure out
25     what happened to the contract.
```

(*Deposition of Matthew Cotton, p. 35, l. 17-25, attached as **Exhibit A***).

```
17  Q  Were you involved at all, Mr. Cotton, in the
18     decision to terminate or not perform the license
19     agreement at issue?
20        MR. TYRA:  And ongoing objection as far as
21     assumes facts not in evidence, form of the
22     question, and draws legal conclusions about whether
23     the agreement was terminated.
24  Q  Well, let me withdraw the question.
25        As CEO of New Sunshine, Mr. Cotton, did you

 1     participate in a decision not to go forward with
 2     the license agreement at issue?
 3        MR. TYRA:  Same objection.
 4        But go ahead.
 5  A  I believe we did go forward with it.
```

(*Deposition of Matthew Cotton, p. 36, l. 17-25; p. 37, l. 1-5*).

```
 9  Q  So once you reached this conclusion that you
10     thought New Sunshine should try to renegotiate the
11     deal, did you have any other involvement in this
12     license agreement?
13  A  Outside of shipping the product and going forward
14     with it?
15  Q  Whatever.
16  A  I mean, we shipped the product.  We had
17     communications with retailers.  We continued to try
18     to have retailers pick it up.  So I guess we
19     have -- I've done quite a bit outside after that.
20  Q  And was that after the agreement had been
```

21    terminated?
22       MR. TYRA:  Objection to the form of the
23    question.
24       Go ahead.
25  Q  Well, let me back up.  At some point Mr. Anderson

1    sent a letter to Melania Marks and the Trump
2    organization essentially terminating the agreement;
3    is that correct?
4       MR. TYRA:  Objection; both to the form of the
5    question and states facts not in evidence and calls
6    for Mr. Cotton to draw a legal conclusion.
7       But you can answer.
8  Q  Let me withdraw the question again.

(*Deposition of Matthew Cotton, p. 46, l. 9-25; p. 47, l. 1-8*).


24  Q  And tell me, sir, the basis for Merchant Capital
25    being the terminating party of the license

1    agreement.  Was it because Merchant Capital then
2    was the manager?
3       MR. TYRA:  Objection to the form of the
4    question as well as assumes facts not in evidence.
5  A  I guess --
6  Q  Well, excuse me.  Let me restate it because I don't
7    want to get bogged down in these fine distinctions
8    about termination.

(*Deposition of James Anderson, p. 31, l. 24-25; p. 32, l. 1-8, attached as **Exhibit B***).

However, Melania Marks' repeated references that New Sunshine terminated the License Agreement are more than a "fine distinction."  Rather, they are factually incorrect.  New Sunshine has performed most of its obligations under the terms of the License Agreement, and is continuing to perform them up to this date.  What the Defendant repeatedly describes as New Sunshine's "termination" is found in letters from James Anderson to Defendant's counsel, Alan Garten, on March 13, 2013 and March 20, 2013, which are attached hereto as **Exhibits C** and **D**, respectively.  On the face of these letters, New Sunshine and Merchant Capital did not

3

"terminate" the License Agreement, but rather sought to discuss its renegotiation. Defendant's response was to abruptly file for arbitration.

Therefore, to avoid any confusion or potentially misleading the Court into thinking New Sunshine did terminate and/or attempted to terminate the License Agreement, Plaintiffs request that Defendant be barred from making these references during the trial.

## II. Evidence, testimony, or argument regarding the baseless allegations that John Menard sexually propositioned Tomisue Hilbert

Plaintiffs request the Court for an Order barring evidence, testimony, or argument that John Menard sexually propositioned Tomisue Hilbert. Defendant has made it abundantly clear that it perceives the issues in this case as follows:

```
8   MR. FUNK: Again, I am going to object
 9      to the question again because it goes beyond
10      the scope of the discovery based on the
11      issues of this case, and the issues are
12      whether the license agreement is enforceable
13      or not; and secondly, whether Merchant
14      Capital has tortiously interfered.
```

(*Deposition of Melania Trump, p. 132, l. 8-14, attached as **Exhibit E***).

However, during the depositions of both Stephen Hilbert and Tomisue Hilbert, both deponents repeatedly referred to their baseless allegations that John Menard sexually propositioned Tomisue Hilbert. For example, the following are examples of the type of testimony Plaintiffs believe is not relevant to the issues before the Court, much less factually supported, and should not be permitted at trial:

```
22   A. So let's go back to August of '11. August of '11
23      when we got the letter from Pete Liupakka, which
24      was directed by John Menard -- Pete Liupakka
25      doesn't do anything unless John Menard tell him

1       to -- that happened to be 90 days after John Menard
2       tried to proposition my wife and then spent another
```

4

```
3      two-plus weeks hounding her on the telephone, along
4      with his wife, to have sex with the two of them.
```

(*Deposition of Stephen Hilbert, p. 109, l. 22-25; p. 110, l. 1-4, attached as **Exhibit F***).

```
3      And it was at the doing of John Menard, and
4      all because I wouldn't have sex with he and his
5      wife. And he said that if I did not have sex with
6      her and him, there would be financial consequences.
7      And when John Menard doesn't get what he wants and
8      you tell him no -- I think everybody at this table
9      has either read about him or knows him. And if
10     they do know him, they know that he doesn't take no
11     well. And I did not go through with his perverted
12     sexual desires, and, for that, here we are with
13     financial consequences.
14     MR. TYRA: Ms. Pence, I assume this is part of
15     how we're supposed to be restricted to talking
16     about this case, is that correct?
```

(*Deposition of Tomisue Hilbert, p. 48, l. 3-16, attached as **Exhibit G***).

As such, Plaintiffs request the Court to issue an order barring evidence, testimony, or argument in any way related to the unfounded accusations that John Menard sexually propositioned Tomisue Hilbert

WHEREFORE, Plaintiffs requests the Court to issue an Order barring evidence, testimony, argument, or otherwise about the foregoing issues at any time during the trial of this matter, and for all other just and proper relief.

    Respectfully submitted,

    /s/Jerry M. Padgett_____
    Jerry M. Padgett (#27282-49)
    One of the Attorneys for Plaintiffs,
    *Merchant Capital, LLC and New Sunshine, LLC*

Kevin C. Tyra, #11883-49
Jerry M. Padgett, # 27282-49
THE TYRA LAW FIRM, P.C.
334 N. Senate Avenue
Indianapolis, IN 46204
Telephone: (317) 636-1304
Facsimile:  (317) 636-1343
kevin.tyra@tyralaw.net
jerry.padgett@tyralaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Norman T. Funk
Libby Y. Goodknight
Bryan S. Strawbridge
KRIEG DEVAULT LLP
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

Martin T. Tully
KATTEN MUCHEN ROSENMAN LLP
martin.tully@kattenlaw.com

/s/ Jerry M. Padgett_____
Jerry M. Padgett