# In The Matter Of:

*Merchant Capital, LLC, and New Sunshine, LLC  v.*
*Melania Marks Skincare, LLC*

---

Stephen C. Hilbert

October 9, 2013

---

Min-U-Script® with Word Index



EXHIBIT F

Page 109

1  Exhibit 78?
2      MR. TULLY: I'm going to object to that
3  question because I don't think it's relevant. But
4  if yours question was what you posed a moment ago
5  as Mr. Hilbert understanding of the ownership and
6  control of New Sunshine as of whatever date you're
7  putting it forward to, that's fine. You can answer
8  that question.
9  Q. Well, but my question is, who are the others you
10 reference in paragraph 3?
11     MR. TULLY: Objection to the relevance of that
12 question. I think it's outside of the scope of
13 this case and intrudes upon issues that may or may
14 not be involved in other pending litigation between
15 the parties in this room. I don't think it's
16 appropriate. All that being said, do you know the
17 answer?
18 A. Yeah, I'm going to give you a little longer answer.
19     MR. TULLY: I tried to help you, Mr. Tyra.
20     MR. TYRA: Thank you. You're doing me a
21 solid. Thank you.
22 A. So let's go back to August of '11. August of '11
23 when we got the letter from Pete Liupakka, which
24 was directed by John Menard -- Pete Liupakka
25 doesn't do anything unless John Menard tell him

Page 110

1  to -- that happened to be 90 days after John Menard
2  tried to proposition my wife and then spent another
3  two-plus weeks hounding her on the telephone, along
4  with his wife, to have sex with the two of them.
5  This all came about when I had this meeting with
6  Bob Caulk. My wife would have filed a suit in
7  January except for this right here (indicating).
8      BY MR. TYRA: --
9  Q. You're referring to the letter?
10 A. -- because we thought we were going to be able to
11 get through this and buy these companies. The
12 other investors -- there were no other investors at
13 the time. I had talked to a few private equity
14 groups and high net worth individuals, that if we
15 would have got be to this point, would have been
16 participating in the capital structure of us buying
17 New Sunshine. At that current time, there was no
18 different ownership than the operating company
19 which owned MH Equity and MH Equity Manager.
20 Q. Okay. So in terms of other persons or entities
21 that would be the others you refer to in
22 paragraph 30, at that point in January of 2012,
23 were there any others that you had in mind?
24     MR. TULLY: Asked and answered.
25 A. It would have been post-closing.

Page 111

1  Q. So there's no one in particular at that point in
2  January you had in mind?
3      MR. TULLY: Asked and answered.
4  A. Asked and answered.
5      MR. TULLY: You can answer again.
6  A. I mean, I told you I talked to a couple of high net
7  worth individuals and a couple of funds that would
8  have been providing some capital if we would have
9  gotten an agreement. But John made the decision.
10 He couldn't stand the thought of the Hilberts
11 making money on any transaction and told Bob Caulk
12 that, and Bob Caulk told me and told me that
13 precisely that way.
14 Q. Were you proposing to buy any other portfolio
15 companies other than New Sunshine?
16     MR. TULLY: Now I'm going to object. That's
17 clearly outside of the scope of this. Now we're
18 not talking about New Sunshine. What's the
19 relevance there?
20     MR. TYRA: Well, it says here that you were --
21 Mr. Hilbert was going to -- wanted to buy New
22 Sunshine.
23     BY MR. TYRA:
24 Q. My question is, were there any other portfolio
25 companies you were looking to buy other than New

Page 112

1  Sunshine?
2      MS. PENCE: What does that have to do with
3  relevance on a contract that was signed in
4  November 2012? What relevance?
5      MR. TULLY: My objection is -- and I'm very
6  concerned now you are starting to get into topics
7  that are more than arguably potentially the subject
8  of other pending litigation we're not here on
9  today, and that would be another ground for seeking
10 a protective order in this case with respect to
11 this witness who has been subpoenaed here for this
12 matter. So let's put that one on the list.
13     MR. TYRA: Ones that you would seek a
14 protective order rather than having him respond to?
15     MR. TULLY: Well, yes, because this is not the
16 time or place for those kind of questions. You may
17 or may not have an opportunity to ask that in the
18 other pending litigation in Wisconsin between New
19 Sunshine and Mr. Hilbert. And I'm not suggesting
20 it is or isn't relevant to that case, but it's
21 clearly not relevant here. I don't think this
22 court is going to appreciate you trying to conduct
23 discovery in those case here. I think your
24 starting to do that, and that's the basis of
25 objection.