UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANT CAPITAL, LLC and ) <br> NEW SUNSHINE, LLC, ) <br> ) <br>     Plaintiffs / Counter-claim ) <br>     Defendants, ) <br> ) <br> v. ) <br> ) <br> MELANIA MARKS SKINCARE, LLC, ) <br> ) <br>     Defendant / Counter-claim ) <br>     Plaintiff. ) | CAUSE NO.: 1:13-cv-00873-JMS-DML |

**PLAINTIFFS' RESPONSE TO STEPHEN HILBERT'S MOTION FOR ORDER BARRING OR LIMITING TOPICS OF DEPOSITION TESTIMONY**

Plaintiffs Merchant Capital, LLC ("Merchant Capital") and New Sunshine, LLC ("New Sunshine") (collectively "Plaintiffs"), by counsel, for their Response to Stephen Hilbert's Motion for Order Barring or Limiting Topics of Deposition Testimony, states the following:

## INTRODUCTION

On October 9, 2013, Plaintiffs took the deposition of Stephen Hilbert ("Hilbert"). During this deposition, counsel for Hilbert objected to several lines of questioning, and instructed his client not to answer the questions. On October 21, 2013, Hilbert filed his Motion for Order Barring or Limiting Topics of Deposition Testimony [DE #69]. Pursuant to the Court's Entry and Order from October 22, 2013 Hearing [DE #72], Plaintiffs have through October 25, 2013 in which to file their response.

## ARGUMENT

Hilbert claims he should not have to provide testimony in response to various questions that he attempts to characterize as "irrelevant and personally-intrusive" and that have "nothing to

do with the apparent crux of this dispute, i.e. whether the 2012 License Agreement between New Sunshine and the Defendant is valid and enforceable." (*Hilbert Motion, p. 2*).

Hilbert enumerates four general categories to which he does not believe he should have to provide additional testimony. Plaintiffs will address each of these arguments as they are set forth in Hilbert's Motion.

I. **The 2013 sale of Hilbert's former personal residence in St. Martin**

Shortly prior to the deposition of Hilbert on October 9, 2013, Plaintiffs learned of the sale of Hilbert's residence in St. Martin, otherwise known as Le Chateau des Palmiers. This residence had been on the market for several years, and at least since approximately June 2010. (*See Deposition of Tomisue Hilbert, June 2, 2011, p. 116, l. 18-21, attached as **Exhibit A**; Deposition of Stephen Hilbert, December 3, 2010, p. 259, l. 20-24, attached as **Exhibit B***).

It has been Plaintiffs contention throughout the course of this case that the structure of the terms of the License Agreement is completely one-sided in favor of Defendant, and one of the reasons for that is the long-standing business and personal relationship between the Hilberts and the Trumps. During the deposition of Melania Trump, she was asked about the last communications between the Trumps and the Hilberts. Other than one phone call in the summer of 2013 to discuss family-related matters, Melania Trump testified she was not aware of any other communications with the Hilberts. (*Deposition of Melania Trump, p. 134, l. 14-25; p. 135, l. 1-9, attached as **Exhibit C***). Yet, apparently subsequent to September 11, 2013 and prior to Hilbert's deposition on October 9, 2013, an agreement was reached by Donald Trump to purchase Le Chateau des Palmiers from the Hilberts (a deal that has since been finalized – see Brochure *attached as **Exhibit D***), even though the property had been sitting on the market for over three years. Among other things, this transaction raises further questions about whether the

License Agreement between Melania Marks and the then-Hilbert-controlled New Sunshine was really an arm's-length transaction, as Defendant contends, and whether the transaction raises further questions about the credibility of testimony by the Hilberts and the Trumps.

Therefore, during the course of the discovery deposition of Hilbert, Plaintiffs merely sought to inquire about what Hilbert knew about this real estate transaction. In his Motion, however, Hilbert asks the Court to prohibit any further testimony on this issue because he claims it has "nothing to do with the narrow issue in dispute between the parties." (*Hilbert Motion, p. 2*). However, while that is obviously Hilbert's opinion, Plaintiffs do not share the same belief, nor should they be precluded from asking about an issue that is another example of a long-running relationship between the parties both before and after the License Agreement in this case was executed.

Moreover, Hilbert contends Rule 26(b)(2)(C)(i)(iii) prohibits discovery that is duplicative, discovery that can be obtained from a less burdensome source, or discovery where the burden in obtaining it outweighs its benefit. (*Hilbert Motion, p. 3*). However, Hilbert completely fails to demonstrate how asking questions about the sale of Le Chateau des Palmiers is duplicative, and that is because the issue had only been discovered shortly before the date of Hilbert's deposition. As such, Plaintiffs never even knew this was a potential line of questioning, and therefore never had the opportunity to question any other deponents or inquire through written discovery about this transaction. Further, asking Hilbert about the sale of Le Chateau des Palmiers cannot be described as discovery that can be obtained from a less burdensome source, as Plaintiffs have been precluded from deposing Donald Trump, the other party to the transaction.

In addition, the burden in obtaining Hilbert's testimony about this real estate transaction does not outweigh its benefit. Or, at least, it should be noted that there would have been no burden to Hilbert had Plaintiffs been allowed to question him during his deposition on October 9, 2013. As pointed out in Hilbert's Motion, Hilbert was examined "at length regarding various issues that are apparently related to the present dispute, and Mr. Hilbert fully answered those questions." (*Hilbert Motion, p. 2*). Therefore, answering any questions about what he knew about the sale of Le Chateau des Palmiers to Donald Trump would not have presented any apparent burden to Hilbert. Consequently, any burden that now may be claimed by Hilbert to resume his deposition to answer questions about this topic is self-imposed, and should not be held against Plaintiffs.

Finally, as evidenced by the portions of the previous deposition testimony the Hilberts gave several years ago, attached as Exhibit A and Exhibit B, there apparently was no problem in them testifying about listing Le Chateau des Palmiers for sale, especially when that had no relevance to the legal issues in that case. But, when Donald Trump purchased the property, the Hilberts were both instructed by counsel not to answer any questions about it.

## II.   Hilbert's alleged personal and/or social relationship with Donald and Melania Trump

As to this issue, Hilbert alleges "Plaintiffs' counsel attempted to ask a series of questions regarding Mr. Hilbert's personal and business relationship with Mr. Trump, including events that are fifteen years removed from the transaction that is the subject of this litigation." (*Hilbert Motion, p. 5*).

However, one of the cited questions to which Hilbert's counsel objected asks about information that is not fifteen years removed from the License Agreement. The question asked "And in that time period of June or July of 1998 **until the beginning of 2011**, about how many

4

times did you speak with Donald Trump on the phone?" (*Hilbert Motion, p. 5*) (emphasis added). This was not a question asking solely about phone calls Hilbert may have had with Donald Trump only fifteen years ago. Instead, this question was posed as what Hilbert could recall over a time frame that led directly into the time the License Agreement began to be negotiated. Again, as argued *supra*, this information is not duplicative nor can it be obtained from a less burdensome source. There also would not have been any additional burden for Hilbert to answer this question, especially when Hilbert had already had been allowed to testify during his deposition on October 9, 2013 about the number of times he had face-to-face encounters with Donald Trump from 1998 through 2011. (*See, generally, Deposition of Steve Hilbert, p. 18-24, attached as **Exhibit E***).

### III. Prior real estate transactions between companies with which Hilbert and Donald Trump were affiliated

Hilbert contends he should not have to provide testimony with regard to "real estate transactions that took place over a decade ago between companies that Mr. Hilbert and Mr. Trump were supposedly affiliated with …" (*Hilbert Motion, p. 7*). In support of this, Hilbert cites to a portion from his deposition in which he had been questioned about his role in a previous business deal with Donald Trump in purchasing the GM building. (*Hilbert Motion, p. 5*). However, Hilbert's objection to providing testimony on this issue is belied by the fact he already provided testimony on this issue at his deposition. In just the short portion cited in Hilbert's Motion, his own counsel permitted Hilbert to answer the question. (*Hilbert Motion, p. 5*). Similarly, there were additional follow up questions on the same topic to which Hilbert provided testimony. (*See, generally, Deposition of Steve Hilbert, p. 30-36*).

Therefore, this is not even an issue that Plaintiffs contest they should be able to further question Hilbert about. In fact, at the end of Hilbert's deposition, counsel for Plaintiffs identified

two issues with which Plaintiffs still should be able to ask questions of Hilbert: 1) the sale of Le Chateau des Palmiers and 2) any questions that may arise from Defendant's supplemental document production, which Plaintiffs had yet to receive as of the date of Hilbert's deposition. (*Deposition of Steve Hilbert, p. 220-221*). As such, Plaintiffs do not have any further questions on this issue.

**IV.     Documents submitted in an unrelated pending bankruptcy case**

Hilbert contends he should not have to respond to any questioning about what he describes are "irrelevant bank transactions listed on a filing in an unrelated bankruptcy proceeding, in which Plaintiffs and Mr. Hilbert are adverse, that is currently pending in the United States Bankruptcy Court for the Southern District of Indiana." (*Hilbert Motion, p. 5*). However, Hilbert's objection to this line of questioning appears to be mooted by the fact he already answered the question to which Hilbert's counsel objected. As noted in Hilbert's Motion, the portion from Hilbert's deposition transcript clearly demonstrates that when asked about a book entry transfer in the bankruptcy pleadings, Hilbert responded "[t]he answer is no." (*Hilbert's Motion, p. 5*).

Furthermore, as stated earlier, any additional questions on this topic were not even identified by counsel for Plaintiffs at the end of Hilbert's deposition. Therefore, there is no other line of questioning Plaintiffs would have on this topic.

WHEREFORE, Plaintiffs requests the Court to issue an Order permitting Plaintiffs to resume the deposition of Steve Hilbert for the limited purpose of questioning him about the sale of Le Chateau des Palmiers, the limited purpose of questioning him about his telephone calls with Donald Trump, as well as for the limited purpose of questioning him about any of

Defendant's supplemental document production, which was just received by Plaintiffs on October 23, 2013, and for all other just and proper relief.

                                        Respectfully submitted,

                                        /s/Jerry M. Padgett_____
                                        Jerry M. Padgett (#27282-49)
                                        One of the Attorneys for Plaintiffs,
                                        *Merchant Capital, LLC and New Sunshine, LLC*

Kevin C. Tyra, #11883-49
Jerry M. Padgett, # 27282-49
THE TYRA LAW FIRM, P.C.
355 Indiana Ave.
Indianapolis, IN 46204
Telephone: (317) 636-1304
Facsimile: (317) 636-1343
kevin.tyra@tyralaw.net
jerry.padgett@tyralaw.net

## CERTIFICATE OF SERVICE

      I hereby certify that on the 25th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Norman T. Funk
Libby Y. Goodknight
Bryan S. Strawbridge
KRIEG DEVAULT LLP
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

Martin T. Tully
KATTEN MUCHEN ROSENMAN LLP
martin.tully@kattenlaw.com

/s/ Jerry M. Padgett\
Jerry M. Padgett