# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MERCHANT CAPITAL, LLC and <br> NEW SUNSHINE, LLC, <br><br> Plaintiffs / Counter-claim Defendants, <br><br> v. <br><br> MELANIA MARKS SKINCARE, LLC, <br><br> Defendant / Counter-claim Plaintiff. | CAUSE NO.: 1:13-cv-00873-JMS-DML |

## **MERCHANT CAPITAL, LLC'S MOTION TO RECONSIDER**

Plaintiff / Counter-claim Defendant Merchant Capital, LLC ("Merchant Capital"), by counsel, for its Motion to Reconsider, states the following:

## **INTRODUCTION**

Merchant Capital files this Motion to Reconsider, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, as to the Court's Findings of Facts and Conclusions of Law for Melania Marks Skincare, LLC's counterclaim of tortious interference against Merchant Capital.

This case was tried before the Court on November 12 – 14, 2013. On November 26, 2013, the Court issued its Findings of Fact and Conclusions of Law ("the Conclusions of Law") [DE #94], which included the conclusion that the court would enter partial judgment in favor of Melania Marks Skincare, LLC on its tortious interference counterclaim [DE #94; PageID #721].[1] However, Merchant Capital files this Motion for the sole and limited purpose of addressing novel legal and factual issues raised *sua sponte* in the Conclusions of Law.

---

[1] Merchant Capital recognizes the Court has not yet entered final judgment at this time.

**THE COURT'S CONCLUSIONS OF LAW REGARDING MELANIA MARKS SKINCARE, LLC'S TORTIOUS INTEREFERENCE COUNTERCLAIM**

In its analysis of Melania Marks Skincare, LLC's tortious interference counterclaim against Merchant Capital, the Court stated "[a]t the outset, the Court finds it necessary to determine the accuracy of Merchant Capital's assertion that it was, in fact, the manager of New Sunshine when Mr. Anderson sent the March 13, 2013 letter to Ms. Trump, Ms. Glosser, and Mr. Gross." (*Conclusions of Law, p. 27*). The Court acknowledged that Merchant Capital's letter of March 13, 2013 states that "New Sunshine's owners have now appointed Merchant Capital, as New Sunshine's sole Manager pursuant to the terms of its existing Operating Agreement." (*Conclusions of Law, p. 30*). The Court cited to no evidence, and undersigned counsel does not recall any evidence at trial, that contradicted the assertion in that letter, which was admitted into evidence.

The Court noted that the March 13, 2013 order from the Eau Claire County Circuit Court "did not address whether the managers of MH Investors Sun LLC or MH Investors Gaming LLC – New Sunshine's only two members – or of New Sunshine itself, were also replaced by Merchant Capital" (*Conclusions of Law, p. 27*), and that the order gave Merchant Capital "the ability to become the manager of any portfolio companies if it acted 'pursuant to [the portfolio company's] operating agreement or other governing documents,' and gave Mr. Hilbert notice." (*Conclusions of Law, p. 28*).

However, the Court further stated "no evidence was presented at trial to indicate that the necessary steps were taken to appoint Merchant Capital as New Sunshine's manager – either by amending New Sunshine's operating agreement or otherwise, and then providing notice to Mr. Hilbert." (*Conclusions of Law, p. 28-29*). From this, the Court concluded "[t]here is no indication that the proper steps were taken to elect Merchant Capital as a manager, as required by

2

the Third Amended and Restated Operating Agreement" (*Conclusions of Law, p. 29*), and that "[i]n short, while Merchant Capital may have had the power to become New Sunshine's manager, there is no indication that it undertook the necessary organizational actions to properly use that power." (*Conclusions of Law, p. 30*). On the other hand, to the best of undersigned counsel's recollection, Melania Marks Skincare, LLC never disputed the assertion that Merchant Capital had assumed the role of manager of New Sunshine in March 2013, as asserted in the letter of March 13, 2013.

The Court's conclusions are of particular import in that the Court identified them as the threshold by which the tortious interference counterclaim was viewed. In particular, the Court stated "[a]ccordingly, the Court will view the tortious interference counterclaim through the lens of Merchant Capital acting as an outside third-party, and not as 'manager' of New Sunshine." (*Conclusions of Law, p. 30*). The Court also stated in a footnote that "[i]t is important to note that Merchant Capital did not replace Managing Members I and II, Funds I and II, or any other entities that are upstream from New Sunshine. It simply became the manager of some of those entities." (*Conclusions of Law, n. 9, p. 30*). Ultimately, the Court entered partial judgment in favor of Melania Marks Skincare, LLC on its tortious interference counterclaim against Merchant Capital. (*Conclusions of Law, p. 32*).

## ARGUMENT

This Motion focuses solely on the issues raised by the Court in its Conclusions of Law with regard to whether Merchant Capital properly acted as the manager of New Sunshine, LLC ("New Sunshine"), or, as the Court viewed it, acted as an outside third-party independent of New Sunshine.

**I.    Legal standards**

In Lock Realty Corp. IX v. U.S. Health, LP, 2010 WL 148296 (N.D. Ind. Jan. 13, 2010) aff'd, 707 F.3d 764 (7th Cir. 2013), the Court stated "Federal Rule of Civil Procedure 54(b) provides that a court may alter or amend an interlocutory order any time before entry of final judgment. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ('[E]very order short of a final decree is subject to reopening at the discretion of the district judge.'). Unlike a motion to reconsider a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60, 'a motion to reconsider an interlocutory order may be entertained and granted as justice requires.' *Akzo Coatings, Inc. v. Aigner Corp.,* 909 F.Supp. 1154, 1160 (N.D.Ind.1995)." Id. at *1.

Further, "[r]econsideration of an interlocutory order may be appropriate when the facts or law on which the decision was based change significantly after issuance of the order, or when the court has misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension." Id.; *see also* Davis v. Carmel Clay Sch., 286 F.R.D. 411, 412 (S.D. Ind. 2012). "A court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact. A motion to reconsider is not an occasion to make new arguments." Davis, 286 F.R.D. at 412. Also, "[a] party seeking reconsideration can't introduce new evidence or legal theories that could have been presented earlier or simply rehash previously rejected arguments." Lock Realty Corp., 2010 WL 148296 at *1 (internal citations omitted).

**II.    Contrary to the Court's conclusions, Merchant Capital did follow the appropriate procedures to become the manager of New Sunshine**

At the outset, Merchant Capital notes that because these issues relate to Melania Marks Skincare, LLC's counterclaim against Merchant Capital, it was incumbent upon Melania Marks

4

Skincare, LLC to raise any issues about the propriety with which Merchant Capital became the manager of New Sunshine. *See, e.g.* Washington Twp. Fire Dep't v. Beltway Surgery Ctr., 911 N.E.2d 590, 597 (Ind. Ct. App. 2009) ("the proponent—the one who seeks to establish the affirmative of an issue—carries the burden of proof.").

Melania Marks Skincare, LLC never once, either before or during the trial, made any claims that Merchant Capital did not take the appropriate steps to become the manager of New Sunshine, at least as of early 2013 after the judge in Eau Claire, Wisconsin ordered it. As such, this was a non-adversarial issue in this case. Essentially, and for the sake of comparison, this is the equivalent of saying there is nothing in the record that Melania Marks Skincare, LLC did not follow the necessary procedures to form an LLC, and consequently they could not have properly been a party to the license agreement with New Sunshine. The formation of Melania Marks Skincare, LLC was not an issue between the parties, and therefore Melania Marks Skincare, LLC did not present evidence of the formalities it followed to form an LLC. Therefore, merely because Merchant Capital did not present evidence on an uncontested extraneous issue in this instance does not support the inferences utilized by the Court after the trial had concluded to find Merchant Capital could not be viewed to have properly acted as the manager of New Sunshine in its dealings with Melania Marks Skincare, LLC.

Furthermore, Merchant Capital did present live testimony from Rodney Smith and James Anderson as to how Merchant Capital became the manager of New Sunshine in March 2013. No consideration was given to present evidence or testimony about the particular steps that were taken, though, because again the issue of whether Merchant Capital followed the appropriate organizational steps to become the manager of New Sunshine was not an adversarial issue at trial.

Specifically, and as it relates to the issues raised by the Court in its Conclusions of Law, Merchant Capital would have presented the following evidence to demonstrate the necessary steps were taken to appoint Merchant Capital as New Sunshine's manager, as well as to provide notice to Stephen Hilbert ("Hilbert"), had Merchant Capital known the Court was going to rely upon non-adversarial issues in its ruling:[2]

    A.    On February 23, 2013, Hilbert sent an e-mail to Melissa Fisher (as CEO of Entertainment Publications), Dom Mangone (as Chairman of MH Equity Services LLC), and Eric Weber (as President of New Sunshine LLC) stating that "Menard obtained a ruling which immediately removes entities under my control as the manager of your entity. I confirm to you my request that you cooperate fully with Menard (which may also be referred to as Merchants Capital) and understand that they now have the authority that was previously vested in MH Equity Managing Member, pursuant to the operating agreement.) (*Affidavit of James Anderson, ¶ 5(a), attached as **Exhibit A**).

    B.    On February 23, 2013, Hilbert sent a letter to Pete Liupakka, the Chief Financial Officer of Menard, Inc. (*Affidavit of James Anderson, ¶ 5(b)*). In this letter, Hilbert, on behalf of MH Equity Managing Member LLC and MH Equity Managing Member II LLC, accepted, acknowledged, and agreed to "the Menard Member's appointment of Merchant Capital in your counsel's February 22 letter as the successor manager of Fund I and Fund II, pending any further ruling of the court." (*Affidavit of James Anderson, ¶ 5(b)*).

---

[2] It bears noting that Merchant Capital, in accordance with Lock Realty Corp., is not introducing evidence or legal theories that could have been presented earlier but were not, and is not rehashing previously rejected arguments. Rather, Merchant Capital is replying directly to conclusions of law that were raised *sua sponte* by the Court, and which were raised for the first time during the pendency of this case in the Court's Conclusions of Law.

C. On March 13, 2013, the sole member of MH Investors Sun LLC executed and issued its Written Consent of the Sole Member in Lieu of a Meeting. (*Affidavit of James Anderson, ¶ 5(c)*). This Written Consent states "MH Equity Managing Member, LLC is hereby removed as the sole manager of the Company," that "the Member deems it to be advisable and in the best interest of the Company to appoint Merchant Capital LLC ('Merchant') as the Company's sole manager ('Manager') to fill the vacancy left by the removal of fill the vacancy left by the removal of MH Equity Managing Member, LLC," and that "Merchant is appointed as the Company's manager." (*Affidavit of James Anderson, ¶ 5(c)*). This Written Consent further states "the Manager hereby is authorized and directed (i) to take all such further actions contemplated by the transactions authorized in the foregoing resolutions, (ii) to execute and deliver all such further agreements, instruments, certificates, documents and other amendments relating thereto or contemplated therein or deemed necessary by the Manager in order to carry out the actions contemplated by the foregoing resolutions in the name of and on behalf of the Company and (iii) to pay all such fees and expenses which shall, in the Manager's judgment, be necessary and proper and advisable." (*Affidavit of James Anderson, ¶ 5(c)*).

D. On March 13, 2013, the sole member of MH Investors Gaming LLC executed and issued its Written Consent of the Sole Member in Lieu of a Meeting. (*Affidavit of James Anderson, ¶ 5(d)*). This Written Consent states "MH Equity Managing Member II, LLC is hereby removed as the sole manager of the Company," that "the Member deems it to be advisable and in the best interest of the Company to appoint Merchant Capital LLC ('Merchant') as the Company's sole manager ('Manager') to fill the vacancy left by the removal of MH Equity Managing Member II, LLC," and that

"Merchant is appointed as the Company's manager." (*Affidavit of James Anderson, ¶ 5(d)*). This Written Consent further states "the Manager hereby is authorized and directed (i) to take all such further actions contemplated by the transactions authorized in the foregoing resolutions, (ii) to execute and deliver all such further agreements, instruments, certificates, documents and other amendments relating thereto or contemplated therein or deemed necessary by the Manager in order to carry out the actions contemplated by the foregoing resolutions in the name of and on behalf of the Company and (iii) to pay all such fees and expenses which shall, in the Manager's judgment, be necessary and proper and advisable." (*Affidavit of James Anderson, ¶ 5(d)*).

  E. On March 13, 2013, the members of New Sunshine LLC executed and issued their Written Consent of the Members in Lieu of a Meeting. (*Affidavit of James Anderson, ¶ 5(e)*). This Written Consent states "the Members deem it to be advisable and in the best interest of the Company to appoint Merchant Capital LLC ('Merchant') as the Company's sole manager ('Manager') to fill the vacancy left by the removal of all the members of the Board of Managers," and that "Merchant is appointed as the Company's manager." (*Affidavit of James Anderson, ¶ 5(e)*). This Written Consent further states "the Manager hereby is authorized and directed (i) to take all such further actions contemplated by the transactions authorized in the foregoing resolutions, (ii) to execute and deliver all such further agreements, instruments, certificates, documents and other amendments relating thereto or contemplated therein or deemed necessary by the Manager in order to carry out the actions contemplated by the foregoing resolutions in the name of and on behalf of the Company and (iii) to pay all such fees and expenses which

shall, in the Manager's judgment, be necessary and proper and advisable." (*Affidavit of James Anderson, ¶ 5(e)*).

F.  On March 13, 2013, a Written Consent of the Sole Member in Lieu of a Meeting, identical to those executed by MH Investors Sun LLC, MH Investors Gaming LLC, and New Sunshine LLC, was also executed by the following MH Private Equity Fund entities: Australian Gold LLC; Boutique Tanning Products LLC; Cal Tan LLC; Designer Skin LLC; ETS LLC; Helios LLC; Splash Tanning Products LLC; and Sunshine Manufacturing LLC. (*Affidavit of James Anderson, ¶ 5(f)*).

G.  On March 15, 2013, James Anderson, on behalf of Merchant Capital, sent a letter to Hilbert informing him that in accordance with the Eau Claire County Circuit Court's March 13, 2013 order, Merchant Capital was "providing notice to [him] of the initial appointment of the following New Managers (as defined in the Order) for the indicated entities." (*Affidavit of James Anderson, ¶ 5(g)*). This letter went on to specify that Merchant Capital was the New Manager of Australian Gold LLC; Boutique Tanning Products LLC; Cal Tan LLC; Designer Skin LLC; ETS LLC; Helios LLC; MH Equity Services LLC; MH Investors Entertainment LLC; MH Investors Gaming LLC; MH Investors Satellite LLC; MH Investors Sun LLC; MH Investors United LLC; MH-EPI Holdings LLC; New Sunshine LLC; Splash Tanning Products LLC; and Sunshine Manufacturing LLC. (*Affidavit of James Anderson, ¶ 5(g)*).

As stated in Lock Realty Corp., the Court may alter or amend its Conclusions of Law when the Court's decision goes beyond the adversarial issues presented by the parties at trial. The documents referred to herein demonstrate Merchant Capital did in fact follow through with all necessary procedures in order to become the manager of New Sunshine, as well as the

multitude of other corporate entities under the Fund umbrella. They also establish that notice was given to Hilbert that Merchant Capital was going to be the new manager of New Sunshine. Therefore, while the Court is correct there was nothing presented as to the individual steps taken to elect Merchant Capital as the manager of New Sunshine, this again primarily relates back to the fact that this was not an adversarial issue at trial.

The Court may also, under <u>Lock Realty Corp.</u>, alter or amend its Conclusions of Law when the Court has misunderstood a party. Here, the misunderstanding relates to the facts surrounding the organizational actions taken by Merchant Capital during its procurement of its role as manager for New Sunshine and the other Fund entities. Despite the testimony from Rodney Smith and James Anderson about the general facts relating to Merchant Capital becoming the manager as the New Sunshine, the Court looked beyond their testimony to attempt to discern what Merchant Capital did to officially act in the capacity as the manager of New Sunshine. Yet, as explained herein, Merchant Capital did take all necessary steps, including providing notice to Stephen Hilbert that Merchant Capital would be taking over the managerial roles previously held by MH Equity Managing Member LLC and MH Equity Managing Member II, LLC.

Further, while the Court noted that Merchant Capital did not "replace Managing Members I and II … or any other entities that are upstream from New Sunshine," (*Conclusions of Law, n. 9, p. 30*) and instead "simply became the manager of some of those entities" (*Conclusions of Law, n. 9, p. 30*), this is another example of a misunderstanding of the facts. For example, the February 23, 2013 e-mail from Stephen Hilbert confirms Merchant Capital would "now have the authority that was previously vested in MH Equity Managing Member, pursuant to the operating agreement." It is also incongruous to say Merchant Capital did not "replace" the

Managing Member entities but merely became the manager when the sole purpose of Managing Members I and II was to manage the Fund corporate entities. Therefore, by taking over as the manager of the Fund entities that was previously held by Managing Members I and II, Merchant Capital did replace Managing Members I and II.

Altogether, there was been a manifest error of fact about Merchant Capital's status as the manager of New Sunshine. As a result, there has also been a manifest error of law in applying the manifest error of fact, especially in light of the manner in which the Court viewed the tortious interference counterclaim. As noted *supra*, the Court asserted that because it found no indication that Merchant Capital undertook the necessary organizational actions to act as the manager of New Sunshine, this was the springboard for the Court's analysis of whether Merchant Capital tortiously interfered with the license agreement between New Sunshine and Melania Marks Skincare, LLC. In the view of Merchant Capital, should the Court grant this Motion and alter and/or amend its Conclusions of Law to find Merchant Capital did in fact follow all necessary procedures to become the manager of New Sunshine, and therefore properly exercised its power as the manager of New Sunshine in its dealings with Melania Marks Skincare, LLC, there would be no legal basis for an entry of judgment in favor of Melania Marks Skincare, LLC on its tortious interference claim.

## **CONCLUSION**

Due to the Court's reliance on issues that were not adversarial in this matter, as well as its misunderstanding of the facts regarding what Merchant Capital did to properly become the manager of New Sunshine, there has been a manifest error of law and fact with regard to the Court's conclusions of law on Melania Marks Skincare, LLC's tortious interference claim against Merchant Capital. As such, the Court should alter and/or amend its conclusions of law to

find that Merchant Capital did take the necessary steps to become the manager of New Sunshine, that the appropriate notice was given to Stephen Hilbert that Merchant Capital would be the new manager of New Sunshine, that Merchant Capital properly exercised its power as the manager of New Sunshine when it attempted to renegotiate the license agreement between New Sunshine and Melania Marks Skincare, LLC, and that Merchant Capital did not tortiously interfere with the license agreement between New Sunshine and Melania Marks Skincare, LLC.

WHEREFORE, Plaintiff Merchant Capital, LLC requests the Court to grant this Motion to Reconsider, and for all other just and proper relief.

Respectfully submitted,

/s/Jerry M. Padgett_____
Jerry M. Padgett (#27282-49)
One of the Attorneys for Plaintiff,
*Merchant Capital, LLC*

Kevin C. Tyra, #11883-49
Jerry M. Padgett, # 27282-49
THE TYRA LAW FIRM, P.C.
355 Indiana Ave.
Indianapolis, IN 46204
Telephone: (317) 636-1304
Facsimile: (317) 636-1343

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Norman T. Funk
Libby Y. Goodknight
Bryan S. Strawbridge
KRIEG DEVAULT LLP
nfunk@kdlegal.com
lgoodknight@kdlegal.com
bstrawbridge@kdlegal.com

                                            /s/ Jerry M. Padgett_____
                                            Jerry M. Padgett