UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MERCHANT CAPITAL, LLC and NEW SUN-SHINE, LLC, | ) |  |
|---|---|---|
| *Plaintiffs*, | ) |  |
|  | ) | 1:13-cv-00873-JMS-DML |
| *vs.* | ) |  |
|  | ) |  |
| MELANIA MARKS SKINCARE, LLC, | ) |  |
| *Defendant.* | ) |  |

## **ORDER**

Presently pending before the Court is Plaintiff/Counterclaim Defendant Merchant Capital, LLC's ("Merchant Capital") Motion to Reconsider. [Filing No. 96.]

## I.
### BACKGROUND

The Court summarizes the background of this litigation, which is set forth in its Findings of Fact and Conclusions of Law issued after a three-day bench trial in November 2013. [Filing No. 94.]

In late 2010 or early 2011, Plaintiff New Sunshine, LLC ("New Sunshine") approached Melania Trump, a member of Defendant Melania Marks Skincare, LLC ("Melania Marks"), to discuss the possibility of forming a business relationship to develop and market high-end skincare products. Stephen Hilbert, New Sunshine's then Chief Executive Officer, knew Ms. Trump from previous business contacts with her husband, Donald Trump, and from occasional contacts through the years.

Formal negotiations began in 2011, and the parties decided to proceed under a licensing arrangement in which New Sunshine or a related entity would be the licensee and Ms. Trump or a company she would control would be the licensor. During the negotiation process, Melania Marks

sought information regarding the ownership and/or control of New Sunshine. New Sunshine's organizational structure is reflected in the chart below, and the information provided in response to Melania Marks' inquiries did not show any actual or impending changes in New Sunshine's ownership or control.



Meanwhile, unbeknownst to Ms. Trump or anyone at Melania Marks who was involved in negotiating the licensing arrangement, Merchant Capital – which is owned and controlled by Menard, Inc. ("Menard") – and Mr. Hilbert were involved in an increasingly bitter business dispute by the summer of 2012. Subsequently, Menard's corporate legal manager and Merchant Capital's legal advisor sent two letters to Mr. Hilbert which purported to remove him from various positions at entities "upstream" from New Sunshine in its organizational structure.

The parties ultimately signed a License Agreement on November 1, 2012. On November 27, 2012, Merchant Capital and two private equity funds in New Sunshine's organizational structure ("Fund I" and "Fund II") filed suit against Mr. Hilbert and two entities upstream from New Sunshine ("Managing Member I" and "Managing Member II") in the Circuit Court of Eau Claire County, Wisconsin. Based on the purported removal of Mr. Hilbert from positions at entities upstream from New Sunshine, Merchant Capital, Fund I, and Fund II sought a temporary injunction enjoining Mr. Hilbert, Managing Member I, and Managing Member II from acting on behalf of Fund I or Fund II. Meanwhile, New Sunshine and Melania Marks proceeded to perform their respective obligations under the License Agreement.

On March 5, 2013, the newly-appointed Chief Executive Officer of New Sunshine sent an email to Ms. Trump stating: "As you probably have heard by now there have been some changes recently at New Sunshine, LLC. I want to assure you that we are confident that these changes will be unnoticed and your product launch will receive the required backing and utmost attention." Ms. Trump responded that same day via email, stating "Thank you for your kind note! We are very close to a launch date – very exciting – and I am sure all will go as planned. Looking forward to working with you and please do not hesitate to call me or e mail me if you have any questions. Hope to see you in NY in April."

On March 13, 2013, the Wisconsin State Court memorialized a February 19, 2013 oral ruling by issuing an Order granting Merchant Capital's, Fund I's, and Fund II's Motion for Temporary Injunction and stating:

> [Mr.] Hilbert and [Managing Member I] are enjoined, until further Order of this Court, from: (i) serving and acting as Chief Executive Officer, President, and Manager of [Fund I], and from undertaking any act or exercising any power or right in such capacity, including, but not limited to, operating or managing Fund I or any of its investments and assets, which include the Subsidiaries or Portfolio Companies (as those terms are defined in the Operating Agreement of Fund I); and (ii)

representing that they are, or otherwise holding themselves out as, the Chief Executive Officer, President, or Manager of Fund I or any of its Subsidiaries or Portfolio Companies….

The Order contained a nearly identical provision relating to Managing Member II and Fund II. It also provided that "[Managing Member I], [Managing Member II], and [Mr.] Hilbert shall turn over management of Fund I and Fund II to Merchant Capital, which has been appointed the Manager of Fund I and Fund II pursuant to the Fund I and Fund II Operating Agreements."

In March 2013, Merchant Capital's manager and sole employee and New Sunshine's Chief Executive Officer, reviewed New Sunshine's outstanding agreements, including the License Agreement. Based on that review, they recommended that Merchant Capital declare the License Agreement void so that it could be renegotiated on new terms more favorable to New Sunshine. On March 15, 2013, Menard's corporate legal manager and Merchant Capital's legal advisor emailed several Melania Marks representatives. He attached a March 13, 2013 letter, written on Merchant Capital letterhead. The letter stated:

> As you are aware, on June 4, 2012, Merchant Capital, the majority owner of [Fund I], removed [Managing Member I], a company owned and controlled by Stephen Hilbert, as Manager of the Fund. At the same time, Mr. Hilbert was also removed from his positions as [Fund I's] President and Chief Executive Officer.
> 
> Because Mr. Hilbert and [Managing Member I] refused to comply with this removal, Merchant Capital filed a lawsuit seeking, among other things, an injunction against them. On March 13, 2013, the Circuit Court of Eau Claire, Wisconsin, entered an order…that enjoins Mr. Hilbert and [Managing Member I] from "serving and acting as Chief Executive Officer, President, and Manager of [Fund I], and from undertaking any act or exercising any power or right in such capacity, including, but not limited to, operating or managing Fund I or any of its investments and assets, which include the Subsidiaries or Portfolio Companies (as those terms are defined in the Operating Agreement of Fund I)." The Court granted this injunction on the ground that [Managing Member I] and Mr. Hilbert had been properly removed by Merchant Capital from such positions in June 2012….
> 
> New Sunshine is one of [Fund I's] portfolio companies covered by this order. As indicated, New Sunshine's owners have now appointed Merchant Capital, as New Sunshine's sole Manager pursuant to the terms of its existing Operating Agreement.

> In its role as Manager, Merchant Capital has recently learned that on November 1, 2012 – after Mr. Hilbert and [Managing Member I] had been removed from [Fund I] – Mr. Hilbert caused New Sunshine to enter into the five-year License Agreement with [Melania Marks]…referenced above. In addition, it appears that [Melania Marks] knew, at the time the agreement was executed, that Mr. Hilbert had been removed from [Fund I], and had no authority to cause New Sunshine to enter into any such agreement. As a result, Manager believes that this contract is void and unenforceable.
>
> At this point, we understand that certain payments have already been made. Merchant Capital would like to discuss with you how the parties can bring this matter to a reasonable and expeditious conclusion….

Contrary to the provisions stating otherwise, the March 13, 2013 letter was actually the first time anyone at Melania Marks learned of the purported removal of Mr. Hilbert from Fund I, the filing of the Wisconsin litigation, or the Wisconsin State Court's Order.

On March 22, 2013, Melania Marks filed a demand for arbitration in New York, requesting a declaration that the License Agreement is enforceable, for New Sunshine to fulfill the payments owed to Melania Marks pursuant to the License Agreement, and for compensatory and punitive damages. The License Agreement called for dispute resolution via arbitration.

On May 2, 2013, Merchant Capital and New Sunshine filed a Complaint for Declaratory Judgment in Marion Circuit Court, which was later removed to this Court on diversity jurisdiction grounds. They then filed an Amended Complaint on May 14, 2013, which sought a declaration that the License Agreement was "void ab initio, that New Sunshine is therefore excused from any and all obligations it may have to Melania Marks…under the terms of the License Agreement, that none of the terms of the License Agreement shall have any merit, legal or otherwise, and that Merchant Capital did not tortiously interfere with the License Agreement because, among other things, it acted within its rights as the manager of New Sunshine and the License Agreement is

void and unenforceable." Merchant Capital and New Sunshine also sought a temporary and permanent injunction enjoining Melania Marks from "attempting to enforce the License Agreement in any manner…," and staying the arbitration proceeding Melania Marks had initiated in New York relating to the License Agreement.

When Melania Marks filed its Answer to the Amended Complaint on July 3, 2013, it asserted a counterclaim against Merchant Capital for tortiously interfering with the License Agreement. After expedited discovery and a three-day bench trial, the Court first found that the License Agreement is valid and enforceable because: (1) the individual that signed the License Agreement on New Sunshine's behalf had actual authority to do so and to bind New Sunshine to its terms; (2) efforts to remove Mr. Hilbert from his positions at companies "upstream" from New Sunshine have no effect on the License Agreement's validity; and (3) there was no fraud, corporate waste, or any other wrongdoing attributable to Melania Marks that would warrant undoing the deal that the parties reached.

As to Melania Marks' counterclaim for tortious interference, the Court found that "while Merchant Capital may have had the power to become New Sunshine's manager, there is no indication that it undertook the necessary organizational actions to properly use that power." [Filing No. 94 at 30.] Accordingly, the Court viewed Merchant Capital's actions "through the lens of Merchant Capital acting as an outside third-party, and not as 'manager' of New Sunshine," and ultimately concluded that Merchant Capital's actions were not justified and its conduct was not "fair and reasonable under the circumstances." [Filing No. 94 at 30-32.] The Court's finding that Merchant Capital did not show that it took the necessary organizational actions to become New Sunshine's manager is the subject of Merchant Capital's Motion to Reconsider.

## II.
### STANDARD OF REVIEW

A district court has the inherent power to reconsider interlocutory orders, as justice requires, before entry of final judgment. *Spencer County Redevelopment Comm'n v. AK Steel Corp.*, 2011 WL 304779, *1 (S.D. Ind. 2011); *see* Fed. R. Civ. P. 54(b) (providing that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 526 (N.D. Ind. 2009). A motion to reconsider is appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A party seeking reconsideration cannot introduce new evidence that could have been discovered before the original motion or rehash previously rejected arguments. *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

## III.
### DISCUSSION

Merchant Capital's Motion to Reconsider focuses only on the Court's determination that Merchant Capital was not acting as New Sunshine's manager, but rather as a third party. [Filing No. 96 at 3.] Notably, Merchant Capital does not argue that the Court's conclusion was erroneous based on the evidence presented at trial. Rather, it argues only that whether it was acting as manager was a "non-issue" in the litigation and, therefore, it did not present evidence showing that it

did take the necessary steps to become New Sunshine's manager. [Filing No. 96 at 4-11.] It asserts that the Court's finding regarding Merchant Capital's status as a third-party rather than as New Sunshine's manager went "beyond the adversarial issues presented by the parties at trial," that evidence not presented at trial shows that Merchant Capital did, in fact, take the necessary steps to become New Sunshine's manager, that the Court "misunderstood" the facts because it did take those necessary steps, and that the misunderstanding regarding facts led the Court to commit a manifest error of law. [Filing No. 96 at 6-11.]

Melania Marks responds that Plaintiffs sought a declaration that Merchant Capital did not tortiously interfere with the License Agreement because, among other reasons, it acted within its rights as New Sunshine's manager. [Filing No. 98 at 4.] Melania Marks notes that it denied that allegation, and that its tortious interference counterclaim "simply mirrored" Merchant Capital's own request for a declaration on that issue. [Filing No. 98 at 4-5.] Melania Marks also notes that Plaintiffs' trial brief contains many references to Merchant Capital acting as the manager of New Sunshine, and that it relies upon that status in arguing that it did not tortiously interfere with the License Agreement. [Filing No. 98 at 4-6.] It also notes that in its own trial brief it argued that it was plausible that Menard was actually New Sunshine's manager, so Plaintiffs were "on notice" that Merchant Capital's role as New Sunshine's manager "was questionable and would be an issue at trial." [Filing No. 98 at 5-6.] Accordingly, Melania Marks argues, the Court's finding that Merchant Capital acted as a third-party was "well within the scope of the adversarial issues presented by the parties." [Filing No. 98 at 7.] Finally, Melania Marks argues that the new evidence Merchant Capital presents through the Motion to Reconsider is inadmissible in part, and is not "new" so cannot be considered by the Court.

Merchant Capital did not file a reply addressing Melania Marks' arguments.

## A. Scope of Adversarial Issues

Merchant Capital argues that whether it was New Sunshine's manager was an issue that never came up in the litigation and that, because the issue relates to Melania Marks' tortious interference counterclaim, "it was incumbent upon Melania Marks…to raise any issues about the propriety with which Merchant Capital became the manager of New Sunshine." [Filing No. 96 at 4-5.] Merchant Capital is incorrect. Indeed, the issue of whether Merchant Capital was New Sunshine's manager came up several times before trial. Merchant Capital raised the issue at least twice, and overtly relied upon its status as New Sunshine's manager to avoid liability on the tortious interference counterclaim:

- In the Complaint, Merchant Capital and New Sunshine sought a declaration that "Merchant Capital did not tortiously interfere with the License Agreement because, among other things, it *acted within its rights as the manager of New Sunshine* and the License Agreement is void and unenforceable," [Filing 1-1 at 10 (emphasis added)]; and

- In its trial brief, Merchant Capital again relied upon its alleged status as New Sunshine's manager to deny it tortiously interfered with the License Agreement. It stated "Merchant Capital, LLC did not tortiously interfere with the License Agreement because, among other things, it *acted within its rights as the manager of New Sunshine, LLC* when it informed Melania Marks…that the License Agreement is void and unenforceable," [Filing No. 81 at 15 (emphasis added)].

Further, Merchant Capital made it clear before trial that it disputed whether Merchant Capital was, in fact, New Sunshine's manager:

- In its Answer, Melania Marks did not admit Merchant Capital's allegation that Merchant Capital became New Sunshine's manager, [Filing No. 36 at 5], and denied its allegation that it was entitled to a declaration that it did not tortiously interfere with the License Agreement because it acted within its rights as the manager of New Sunshine, [Filing No. 36 at 6]; and

- In its trial brief, Melania Marks specifically argued that "one reasonable interpretation of the June 4, 2012 letter is that Menard, Inc. became New Sunshine's manager when Mr. Hilbert and MH Equity Managing Member were replaced. If Menard, Inc. effectively was New Sunshine's manager as of March 15, 2013,

> then Merchant Capital – a separate entity – is not protected under a claim that it acted as New Sunshine's agent when the Agreement was declared void and unenforceable," [Filing No. 80 at 22].

It simply is not correct that Merchant Capital's alleged status as New Sunshine's manager was "not an adversarial issue at trial." [Filing No. 96 at 5.][1] It was, and Merchant Capital – as the party relying on that status to avoid liability on the tortious interference counterclaim – had every opportunity to present evidence establishing its status as manager. The Court will not reconsider its ruling on the tortious interference claim based on an argument that the issue was not at play in this case.

### B. New Evidence

Merchant Capital argues that had it known its status as manager of New Sunshine was in question, it would have presented evidence showing that the necessary steps were taken for it to become manager. [Filing No. 96 at 6-9.] It proceeds to introduce and discuss the evidence it would have presented, and states that it "is not introducing evidence or legal theories that could have been presented earlier but were not, and is not rehashing previously rejected arguments. Rather, Merchant Capital is replying directly to conclusions of law that were raised *sua sponte* by the Court, and which were raised for the first time during the pendency of this case in the Court's Conclusions of Law." [Filing No. 96 at 6.]

---

[1] Merchant Capital argues that treating its status as New Sunshine's manager as an adversarial issue "is the equivalent of saying there is nothing in the record that Melania Marks Skincare, LLC did not follow the necessary procedures to form an LLC, and consequently they could not have properly been a party to the license agreement with New Sunshine." [Filing No. 96 at 5.] But Melania Marks has not specifically relied upon its status as an LLC to avoid liability on a counterclaim, as Merchant Capital has done with its alleged status as manager in connection with the tortious interference counterclaim. Further, Plaintiffs have never denied Melania Marks' status as an LLC or challenged that status in any way – indeed, the parties filed a Joint Jurisdictional Statement in which they stated that Melania Marks "is a limited liability company organized in Delaware with its principal place of business in New York." [Filing No. 21 at 3.] The Court rejects Merchant Capital's analogy.

Merchant Capital's sole argument is that the Court should consider the additional evidence it presents because it did not know it should have presented it at trial since the issue of its status as manager was nonadversarial. It does not argue that the evidence was somehow newly discovered, or unavailable to present at trial. The Court has already found that the issue of Merchant Capital's status as manager was raised – both by Merchant Capital and Melania Marks – before trial. As such, Merchant Capital should have known to present evidence indicating it took the necessary steps to become manager. It did not, and it cannot do so now. *See [Caisse Nationale de Credit Agricole, 90 F.3d at 1269-70](.)* (a motion for reconsideration cannot "be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the…motion" and is not for "arguing matters that could have been heard during the pendency of the previous motion").

The Court relies upon the parties to present the issues in the most effective way possible. *See [Greenlaw v. United States, 554 U.S. 237, 243-44, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008)](.)* ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotations and citations omitted). If Merchant Capital intended to rely on its status as manager of New Sunshine to justify its actions, it should have introduced evidence to show that it was, in fact, its manager and to dispel Melania Marks' claims that it was not. The Court will not now consider evidence that Merchant Capital admittedly could have introduced at trial on that issue.[2]

---

[2] Because the Court has concluded that it will not, and cannot, consider the new evidence Merchant Capital presents in its Motion to Reconsider, it need not consider Melania Marks' argument that some of that evidence is inadmissible.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Merchant Capital's Motion to Reconsider, [Filing No. 96]. The parties are **ORDERED** to file a joint report regarding the status of this case and of the New York arbitration by **September 8, 2014**.

August 27, 2014

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**